**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DOMINIQUE GREEN,
*on behalf of herself and others similarly situated,*

      Plaintiff,

          v.

SWEETWORKS CONFECTIONS, LLC,

      Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

     Plaintiff DOMINIQUE GREEN (hereinafter, "Plaintiff GREEN" or "Plaintiff"), individually and on behalf of all other persons similarly situated in New York and the United States, by her undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, SWEETWORKS CONFECTIONS, LLC, alleges the following:

## NATURE OF THE ACTION

     1.    This is a consumer protection action arising out of the deceptive and otherwise improper business practices that Defendant, SWEETWORKS CONFECTIONS, LLC (hereinafter, "Sweetworks" or "Defendant"), engages in. The candy is sold in a box with the approximate dimensions 6.625 inches by 3.25 inches by 1 inch, giving each box a volume of

about 21.531 cubic inches with 3.5 oz. of candy per box (the 21.531 cubic inches box[1] and the

candy enclosed within together comprising the "Product"). The Product is regularly sold at drug

stores such as Walgreens and online. Below is an image of the Product in various flavors:



2.      The Product is mass produced and packaged in a non-transparent box of

standardized size and composition, with a standardized quantity of candy in each box.

Regardless of the color of the box or color of the candies within, every Product box is essentially

identical as regards to its dimensions and the physical dimensions of the candy within.

3.      Defendant manufactures, markets and sells the Product with non-functional slack-

fill (unnecessary empty space) in violation of the Federal Food Drug & Cosmetic Act ("FDCA")

Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et seq.*, as

---

[1] 6.625 x 3.25 x 1 = 21.531.

well as the laws of New York State, the other 49 states, and the District of Columbia, which impose requirements identical to federal law. Defendant's boxes are consequently made, formed or filled as to be misleading.

4.      Slack-fill is air or filler material within a packaged product. *Non-functional* slack-fill is slack-fill that serves no legitimate purpose, and misleads consumers about the quantity of food they are purchasing. When consumers purchase a package of Defendant's Product, they are getting less candy than they bargained for. They are effectively tricked into paying for air, because each Product box contains a large amount of non-functional slack-fill.

5.      The size of the Product box in comparison to the volume of the candy contained therein makes it appear to Plaintiff and Class members that they are buying more candy than what is actually being sold. Plaintiff and Class members are denied the benefit of their bargain because they pay for full boxes of the Product but actually receive boxes that are mostly air.

6.      That the slack-fill in the Product is non-functional is proven in comparison to Defendant's other Sixlets candy box, which is almost exactly half the size of the Product box, but contains the same quantity of candy (hereinafter, "Smaller Sixlets"). The Smaller Sixlets box is the exact same weight as Plaintiff's Product box – yet is nearly half the size of the Product's container. The dimensions of the Smaller Sixlets box are 6.625 inches by 3.25 inches by 0.5 inches, with a volume of 10.766 cubic inches.[2] By contrast, the dimensions of the Product are 6.625 inches by 3.25 inches by 1 inch, with a volume of 21.531 cubic inches; this demonstrates that it is possible to fit a greater quantity of candy into Defendant's Sixlets Product box. The surplus empty space in Defendant's Product box, over and above the space in its own Smaller Sixlets box, is **<u>certainly</u>** non-functional slack-fill. Defendant fits the same amount of candy into

---

[2] 6.625 x 3.25 x 0.5 = 10.766.

a smaller box than the box that the Product uses. This proves that **at least** some of the empty space in the Product boxes is unnecessary and thus misleading.

7.    All Product boxes are standardized to be mostly filled with air. Class members' Product boxes were sized and filled to the same common standard.

8.    Plaintiff brings this proposed consumer class action on behalf of herself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not for resale.

9.    During the Class Period, Defendant manufactured, marketed and sold the Product throughout the United States and the State of New York. Defendant purposefully sold the Product with non-functional slack-fill as part of a systematic practice.

10.    Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS Section 505/1, *et seq.*;
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;
16) Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;
17) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

4

*19)* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

*20)* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

*21)* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

*22)* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)* Michigan Consumer Protection Act, § 445.901, *et seq.*;

*24)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.* ;

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, and New York False Advertising, N.Y. Gen. Bus. Law § 350, *et seq.*;

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*44)* Texas Stat. Ann. § 17.41, *et seq.*, Texas Deceptive Trade Practices Act, *et seq.*;

*45)* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

*47)* Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196, *et seq.*;

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

11.     Defendant has deceived Plaintiff and other consumers by inducing Plaintiff and Class members to reasonably rely on Defendant's misrepresentations and purchase the Product which they would not have purchased at the given price had they known the truth. Through these

unfair and deceptive practices, Defendant has profted from the sale of its Product that it would not have otherwise earned. Plaintiff brings this action to stop Defendant's deceptive practice.

12.     Plaintiff expressly does not seek to enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

14.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

15.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because it conducts substantial business in this District. Some of the actions giving rise to the Complaint took place in this District, and Plaintiff's claims arise out of Defendant operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or has intentionally availed itself of the markets in New York State, rendering the exercise of

jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

17.     Plaintiff GREEN is, and at all relevant times hereto has been, a citizen of the state of New York and a resident of New York County. On December 29, 2017, Plaintiff GREEN purchased a Product box containing 3.5 oz. of Sixlets chocolate candy for personal consumption. Plaintiff GREEN purchased the Product at a Kmart Store location at 770 Broadway, New York, New York. Plaintiff GREEN purchased the Product for $0.50, and was financially injured as a result of Defendant's deceptive conduct as alleged herein because she did not receive the quantity that she paid for and was promised. Plaintiff GREEN paid to receive a box of candy that was functionally full, but the box Plaintiff GREEN received contained approximately 60% slack-fill, most of which was non-functional slack-fill.

18.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff GREEN was injured when she paid full price for the Product but did not receive a full container. Plaintiff was economically injured by the shortfall in her Product box. Her injury was equivalent to the proportion of her purchase price that paid for non-functional slack-fill in the Product. Should Plaintiff GREEN encounter the Product in the future, she could not rely on the

truthfulness of the packaging, absent corrective changes. Plaintiff GREEN would still be willing to purchase the Product in its current formulation, as long as she is not compelled to pay for empty space within the container when buying the Product.

*Defendant*

19.     Defendant SWEETWORKS CONFECTIONS, LLC is a corporation organized under the laws of New York with its headquarters at 3500 Genesee Street, Buffalo, New York, 14225. This address also serves as the address for service of process as well. Defendant manufactures, packages, distributes, advertises, markets, and sells the Product to customers nationwide.

20.     The labeling, packaging, and advertising for the Product, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Product and misled reasonable consumers, including Plaintiff and the Class, into purchasing the Product. Defendant owns, markets and distributes the Product, and creates and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Product.

## FACTUAL ALLEGATIONS

**Identical Federal and State Law Prohibit Misbranded Foods with Non-Functional Slack-Fill**

21.     Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading."

22.     The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

8

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

23.    The food labeling laws and regulations of New York impose requirements which mirror federal law.

24.    New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded . . . If its container is so made, formed, colored or filled as to be misleading." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

"For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts

the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) . . . in the area of food packaging and labeling as follows: . . . (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10. . . ."

1 NYCRR § 259.1(a)(2).

25.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

## Defendant's Product Contains Non-Functional Slack-Fill

26.     The Sixlets Product package is a box that is approximately 6.625 inches by 3.25 inches by 1 inch with a volume of approximately 21.531 cubic inches. If the box is oriented such that it is 6.625 inches vertically, then the candy only fills the bottom 2.625 inches of the box, with 4 vertical inches of air.[3] The candy occupies 40%[4] of the box; air occupies the other 60% of the box, leaving 60% slack-fill[5]:

---

[3] 6.625 inches of vertical capacity − 2.625 inches of candy = 4 inches of slack-fill.

[4] $\frac{2.625 \text{ inches of candy}}{6.625 \text{ inches of vertical capacity}}$ = Approximately 40% of the Product box is filled with candy.

[5] $\frac{4 \text{ inches of slack-fill}}{6.625 \text{ inches of vertical capacity}}$ = Approximately 60% slack-fill is in the Product box.



27.     While some of Defendant's slack-fill may have functional justifications related to

packaging requirements or the effects of settling, Defendant's total slack-fill far exceeds the

amount necessary, and almost all of the slack-fill is therefore nonfunctional. This is proven by

the fact that the slack-fill in Defendant's Product is significantly greater than the slack-fill in the

packaging of its Smaller Sixlets box, which is about half the size of the Product box, but contains

the same amount of candy. Below is a comparison of the slack-fill in the Product (left) with the slack-fill in the Smaller Sixlets box (right):



28.     The candy inside the Smaller Sixlets box fills approximately 5.875 inches of the box, leaving only about 0.75 inches of empty space at the top of the box, i.e. merely 11%[6] slack-fill, significantly less than the 60% slack-fill in the Product.

29.     The Smaller Sixlets box has the exact same weight and amount of candy as the Product; however, the Smaller Sixlets box is half the size as the Product box. The dimensions of

---

[6] $\dfrac{6.625 \text{ inches of vertical capacity} - 5.875 \text{ inches of candy}}{6.625 \text{ inches of vertical capacity}}$ = Approximately 11% slack-fill.

the Smaller Sixlets box are approximately 6.625 inches by 3.25 inches by 0.5 inches with a volume of 10.766 cubic inches. By contrast, the dimensions of the Product are approximately 6.625 inches by 3.25 inches by 1 inch, with a volume of 21.532 cubic inches. Defendant cannot plausibly argue that it could not fit the candy in the Product box into a smaller box, because it has already done exactly this, placing the same quantity of candy in a box that is approximately **half** the size:



30.    The Smaller Sixlets box has 11% slack-fill. The slack-fill in the Smaller Sixlets box may or may not all be functional, but a box of Sixlets candy needs no more than 11% slack-fill. Slack-fill in excess of 11% in the Product is **certainly** non-functional, as the comparable Smaller Sixlets box demonstrates. However, Defendant fraudulently induces sales at inflated prices by tricking consumers into believing that they are purchasing a box containing only a). candy and b). the amount of slack-fill that is necessary, i.e. approximately 11% slack-fill. The

Product boxes have significant amounts of non-functional slack-fill instead of candy, so consumers who purchased the Product received far less candy than they bargained for.

31.     The packaging of competitors' candy also makes clear that it is possible to package a candy product with far less than 60% slack-fill. For example, Hershey's 5 oz. Milk Duds is a comparable product in terms of box size. The dimensions of the 5 oz. Milk Duds box are 6.125 inches by 2.625 inches by 0.9375 inches, giving each box volume of 15.07 cubic inches.[7] If the box is oriented such that it is 6.125 inches vertically, the Milk Duds box has about 4.7 inches of candy and contains only 1.425 inches of slack-fill. In other words, the Milk Duds box encloses about 77% candy and 23% slack-fill.[8] The images below show the level of fill in the Milk Duds box and how it appears when opened:

---

[7] 6.125 x 2.625 x 0.9375 = 15.07.

[8] $\frac{1.425\ inches\ of\ slack\ fill}{6.125\ inches} = 23\%$.

**Height of Vertical Capacity: 6.625 inches**



**Approximate Height of Candy: 4.7 inches**



32.     The Milk Duds candy demonstrates that it is possible to package a candy product with far less than the 60% slack-fill found in the Sixlets Product box.

**<u>The Safe-Harbor Provisions of 21 C.F.R. § 100.100 Do Not Justify the Slack-Fill in Defendant's Products</u>**

33.     The FDA has defined non-functional slack-fill as any slack-fill in excess of that required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in § 100.100(a) apply to that portion of the slack-fill within a container that is necessary for, or results from, a specific function or practice, e.g., the need to protect a product. Slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill. Thus, the exceptions in § 100.100(a) provide only for that amount of slack-fill that is necessary to accomplish a specific function. FDA advises that these exceptions do not exempt broad categories of food, such as gift products and convenience foods, from the requirements of section 403(d) of the act. For example, § 100.100(a)(2) recognizes that some slack-fill may be necessary to accommodate requirements of the machines used to enclose a product in its container and is therefore functional slack-fill. However, § 100.100(a)(2) does not exempt all levels of slack-fill in all mechanically packaged products from the definition of nonfunctional slack-fill.

58 FR 64123, 64126 [emphasis added].

34.     Thus, the possibility that some portion of the slack-fill in Defendant's Product may be justified as functional based on the exemptions in §100.100(a) does not justify slack-fill that is in excess of that required to serve a legitimate purpose—protecting contents, accommodating the machines that enclose the contents, accommodating settling, etc. Such slack-fill serves no purpose other than to mislead consumers about the quantity of food they are actually purchasing. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1–6).").

35.     The fact that Defendant's Products contains slack-fill in excess of what is permitted under § 100.100 is proven by the fact that its own Smaller Sixlets Product, and other similarly sized candy boxes contain significantly less slack-fill. As shown above, both the Smaller Sixlets Product, and competitor's Milk Duds product contain far less non-functional slack-fill, and thus more candy, despite being under the same constraints as Defendant as to factors such as the need to protect package contents, accommodate machines, and settling.

36.     The comparison is between the same kind of products in the same kind of packaging that is enclosed in the same way by the same kind of technology. And yet Defendant

and its competitors manage to package their candy in a way that leaves consumers with a more accurate sense of how much food they are actually purchasing. Thus, whatever real constraints **might** justify the slack-fill in the competitor candies cannot explain the excess slack-fill (shortfall) in the Sixlets Product. This logic applies for every safe-harbor provision of 21 C.F.R. § 100.100(a)(1–6), as follows:

**(1) Protection of the contents of the package;**

37.     Defendant packages the same candies and protects its candy with far less slack-fill than is in the Product. Any slack-fill in the Product that exceeds the amount of slack-fill in Smaller Sixlets product therefore clearly does not qualify for this safe harbor because that slack is demonstrably not necessary to protect the contents of the package.

**(2) The requirements of the machines used for enclosing the contents in such package;**

38.     Defendant packages the same candy and encloses the candy in substantially similar cardboard boxes with far less slack-fill than is in the Product. Any slack-fill in the Product that exceeds the amount of slack-fill in the Smaller Sixlets product therefore clearly does not qualify for this safe harbor because machines that enclose candy do not require such extensive slack-fill.

**(3) Unavoidable product settling during shipping and handling;**

39.     The Product experiences little to no settling. Defendant's Smaller Sixlets product has a similar composition and undergoes the same minimal or zero amount of settling, but any such settling in Smaller Sixlets does not create total slack-fill of more than about 11%. This is in contrast to the 60% slack-fill that is in the Product. Any slack-fill in the Products that exceeds the amount of slack-fill in the Smaller Sixlets product therefore clearly does not qualify for this safe harbor because chocolate candy demonstrably can be shipped without 60% settling. Neither

settling nor any other cause introduces such a large amount of slack-fill into the Smaller Sixlets product, therefore the slack-fill in the Product that is in excess of the slack-fill in the Smaller Sixlets product is demonstrably not "unavoidable" because other manufacturers in fact avoid it, so the safe harbor does not apply to the Product.

**(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;**

40.     Defendant's Smaller Sixlets similar candy, in substantially identical packaging as the Product, is designed to be eaten in the same manner as the Product, but nothing about this compelled Defendant to introduce slack-fill in its Smaller Sixlets candy box. Any slack-fill in the Product that exceeds the amount of slack-fill in the Smaller Sixlets product therefore does not qualify for this safe harbor because there is no special function performed by the packaging that requires this slack-fill in a candy box (and if there is such a function it is not communicated to consumers).

**(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages;**

41.     This safe-harbor equally does not apply to either the Product or Smaller Sixlets boxes because the cardboard boxes are not significantly valuable.

**(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).**

42.     Defendant's Smaller Sixlets candy is packaged and sold in the same stores as the Product, but nothing about this prevents Defendant from fully filling its Smaller Sixlets candy

19

boxes with only candy and functional slack-fill. Any slack-fill in the Product that exceeds the amount of slack-fill in Smaller Sixlets therefore clearly does not qualify for this safe harbor because it is demonstrably possible to simply fill the boxes with candy until there is less than 11% slack remaining, as shown by its own Smaller Sixlets candy product.

**Plaintiffs and the Class Reasonably Relied on the Size of the Product's Packaging as a Material Indicator of How Much Food They Were Purchasing**

43.    At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Product contained non-functional slack-fill as set forth herein, and consumers would not have bought the Product at the given prices had they known the truth about them.

44.    Defendant's Product packaging is a material factor in Plaintiff and Class members' decisions to purchase the Product because reasonable consumers would attach importance to the quantity of food they believe they are purchasing.

45.    Plaintiff and the Class reasonably relied on the size of the Product's packaging to infer how much food they were purchasing and reasonably believed that the boxes were filled as closely to capacity as functionally possible. The FDA has explained why such reliance is reasonable:

> Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container. Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label."

58 FR 64123, 64131 [emphasis added].

46.     Congress recognized that the size of a package is in and of itself a kind of sales pitch, even if not made with words or numbers. Thus, consumers can reasonably rely on packaging size as a representation of quantity regardless of whatever is printed on the label. And manufacturers can be held responsible for non-functional slack-fill regardless of whatever else they say.

**Reasonable Consumers Rely on Label Representations and Are Not Required to Manipulate Food Packaging**

47.     Defendant might argue that Plaintiff and the Class should not have relied on the packaging's size to infer its contents because they could have manipulated the packaging in order to acquire a sense of the slack-fill therein (i.e., shaking the package to hear the candy rustling or poking it to feel the air), but the FDA has stated that such manipulation cannot be reasonably expected of consumers:

> FDA advises that the entire container does not need to be transparent to allow consumers to fully view its contents, i.e., a transparent lid may be sufficient depending on the conformation of the package. On the other hand, FDA finds that devices, such as a window at the bottom of a package, that require consumers to manipulate the package, e.g., turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container. FDA finds that such devices do not adequately ensure that consumers will not be misled as to the amount of product in a package. Therefore, such foods remain subject to the requirements in § 100.100(a) that slack-fill in the container be functional slack-fill.

58 FR 64123, 64128 [emphasis added].

48.     Here, the FDA was contemplating a scenario in which manipulating a package might permit an accurate visual estimate of its contents. This is clearly impossible in the case of Defendant's wholly non-transparent packaging, which can only provide audial or tactile clues as to the Product's slack-fill. But the same basic principle applies: the possibility that manipulating a package might yield additional insight into its contents does not exculpate non-functional slack-fill (just as accurate net weight disclosures do not). The possibility of manipulating a

partially transparent package (that has a window) to discover the truth about it does not mitigate the false statement conveyed by the disproportionately large size of the product packaging. Likewise the existence of true label statements regarding weight and quantity (if any) do not diminish Defendant's wrongdoing in using a false and misleading packaging size.

49.     Many Class members, purchased the Product at movie theaters. In this context it was not logistically possible to manipulate packages before purchase. As explained above, even when consumers physically could have manipulated the Product packages before purchase, it is not reasonably expected or required of them. Considering the actual circumstances of the movie theater Product purchases, for many Class members there was no opportunity whatsoever to discover that the Product is underfilled.

**The Products' Packaging is Misleading Because it Misrepresents the Volume of Candy Contained Within, Regardless of Whether Label Statements Regarding Weight are True**

50.     Even if Defendant's net weight disclosures are accurate, such does not eliminate this basic deception caused by Defendant's false representation of quantity because the mere presence of a true statement does not cure associated fraudulent statements. The FDA has confirmed this in unequivocal terms:

> FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading.

58 FR 64123, 64128 [emphasis added].

> Section 403(e) of the act requires packaged food to bear a label containing an accurate statement of the quantity of contents. This requirement is separate and in addition to section 403(d) of the act. To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant. In fact, Congress stated (S. Rept. No. 493, 73d Cong., 2d sess. 9 (1934)) in arriving at section 403(d) of the act that that section is "intended to reach deceptive methods of filling where the package is only partly filled and, despite the declaration of quantity of contents on the label, creates the impression that it contains more food than it does." Thus, Congress clearly

22

intended that failure to comply with either section would render a food to be misbranded.

58 FR 64123, 64128-64129 [emphasis added].

51.    Independently from the text on the Product label and regardless of its text's accuracy or inaccuracy, the size of the Product packaging makes a representation about the quantity of candy it contains. For Defendant's Product, this representation is false. False product representations are false and unlawful even if a manufacturer also makes some true claims about its product.

52.    Even if consumers had come to expect significant slack-fill in boxed candy products, this too would not have eliminated Defendant's deception. The FDA has stated that "although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 FR 64123, 64131.

53.    The Product is misbranded regardless of any disclosures about contents settling and regardless of whether or not weight is labeled accurately. Under Federal regulations, "label statements cannot correct nonfunctional or misleading fill." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64129 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100).

54.    As the FDA explains in the Federal Register:

Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container. Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the

23

> quantity of food which they contain despite the declaration of quantity of contents on the label."

58 Fed. Reg. 64123-01, 64131 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100) (emphasis added).

55.     The presence of true label statements on the Product's packaging regarding weight and number of servings, if any, would not and could not mitigate the false implicit statement of quantity made by the package size. Reasonable consumers such as Plaintiff and the Class expected no more air in the packaging than would be present in other candies such as Smaller Sixlets or Milk Duds®. Consumers were injured to the extent that Defendant under-filled the Product containers. Plaintiff and the Class members damages are simply the proportion of the Product purchase price that Defendant collected from Plaintiff and the Class equivalent to the percent of non-functional slack-fill.

56.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions").

**An Accurate Unit Count Could Not Cure Defendant's Deception**

57.     Defendant's false representation of quantity, created by the **size** of the Product packages, cannot be cured by a **written** weight or count representation. A disclosure that Plaintiff's box contained a particular number of pieces of candy would not establish its fill level because it implies nothing about the *size* of those pieces – and thus about the amount of candy that is actually in the box. As explained in *United States v. 174 Cases*:

> The question was not whether the ordinary purchaser would expect to find a particular number of individual candies in the box but whether such a purchaser

24

would expect to find more of the Delson box filled. For example, the purchaser of a crate of apples opens the crate and finds it half filled. To determine whether he was deceived we do not ask whether he expected to find a particular number of individual apples in the crate. We do ask whether he expected to find more of the crate filled. This is the pertinent question. People do not think in terms of the number of individual mints when buying them in containers.

*United States v. 174 Cases*, 287 F.2d 246, 247-48 (3d Cir. 1961)

*See also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 479-80 (S.D.N.Y. 2014)  ("Although the presence of a disclaimer or other clarifying language may defeat a claim of deception, the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer) (quotations and citation omitted); *see also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) ("[a]t this early stage of the litigation, it cannot be determined whether a disclaimer . . . eliminates the possibility of a reasonable consumer being misled . . ."); *Ackerman v. Coca-Cola Co.*, No. 09- CV-0395, 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [the defendant]'s labeling and marketing").

58.    In any case, the Product boxes do not contain an actual unit count, although an unusually diligent consumer could derive the count by multiplying the number of servings by the number of pieces per serving.

**Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Conduct**

59.    Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Product than Defendant represented they would be receiving. Plaintiff and the Class were deprived of the benefit of their bargain.

60.    Defendant's Smaller Sixlets box candy demonstrates that a box of Sixlets candy contains **at most** 11% functional slack-fill, and therefore should contain **at least** 89% candy.

However Plaintiff GREEN paid $0.50 for a box of the Product and her box was only about 40% full of candy, with slack-fill of about 60%.

61.     Since the Product box was 40% full when it should have been **at least** 89% full, Plaintiff received **at most** 45%[9] of what she bargained for. Accordingly, **at least** 55%[10] of the purchase price, or about $0.28[11] was unlawfully taken.

62.     In order for Plaintiff and Class members to be made whole, they must be compensated in an amount of the proportion of the purchase price equal to the percentage of non-functional slack-fill in the Product, which is equivalent to the amount of product Plaintiff and the Class paid for that Defendant did not-deliver. *See Lazaroff v. Paraco Gas Corp.*, 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised . . . Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349."); *Waldman v. New Chapter*, Inc., 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("Plaintiff alleges that, had he understood 'the true amount of the product,' he 'would not have purchased' it . . . Thus, Plaintiff has properly alleged injury. Accordingly, Plaintiff's § 349 claim survives Defendant's motion); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in his Complaint, Plaintiff seeks monetary damages on the grounds that she 'would not have paid the premium

---

[9] $\dfrac{\textbf{40}\% \text{ actual fill}}{\textbf{89}\% \text{ minimum expected fill}} = 45\%$

[10] 100% - 45% = 55%.

[11] 55% x $0.50 = $0.28.

price she paid' to buy the Product had she 'known the truth.'. . . Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.").

## CLASS ACTION ALLEGATIONS

63.     Plaintiff GREEN brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

64.     In the alternative, Plaintiff GREEN seeks to represent:

> All persons who made retail purchases of the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

65.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

66.     Class members are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

67.     Plaintiff's claims are typical of the claims Class members as they all are similarly affected by Defendant's wrongful conduct.

68.     Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff has no interests antagonistic to them. Plaintiff has retained experienced and competent counsel.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to individually seek redress for the wrongful conduct alleged herein.

70.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members. These include:

     i.    Whether Defendant labeled, packaged, marketed, advertised and/or sold the Product to Plaintiff and Class members using false, misleading and/or deceptive packaging and labeling;

    ii.    Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

   iii.    Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Product;

   iv.    Whether Defendant's labeling, packaging, marketing, advertising and/or selling of its Product constituted an unfair, unlawful or fraudulent practice;

    v.    Whether the packaging of the Product during the class period contained unlawful non-functional slack-fill;

   vi.    Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent future misconduct;

  vii.    Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

viii.   Whether Defendant purposely chose non-transparent Product packaging so that Plaintiff and Class members would not be able to see the amount of slack-fill contained in the Product;

ix.   The appropriate measure of damages and/or other relief.

71.   The membership of the Classes is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

72.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

73.   The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

74.   The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

75. The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

76. Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

77. Plaintiff GREEN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

78. Plaintiff GREEN brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

79. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

80. Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not

an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

81.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Product in packaging containing non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403 (21 U.S.C. 343(d)). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading."

82.     The foregoing deceptive acts and practices were directed at consumers.

83.     Defendant should be enjoined from packaging its Product with non-functional slack-fill, as described above, pursuant to NY GBL § 349.

84.     Plaintiff is at risk of several types of future injury, each of which justifies the imposition of an injunction. Absent an injunction, Plaintiff GREEN is at risk of continued injury because she is no longer able to rely on Defendant's representations, regardless of whether they are true or false. Plaintiff may hesitate to purchase Defendant's Products even if it ceases its unlawfully labeling the Products by packaging them with misleading slack-fill. Plaintiff may hesitate to purchase Defendant's Products even if it begins manufacturing the Product without any slack-fill. If the Products are no longer sold with the false packaging representations, Plaintiff GREEN could not uninhibitedly take advantage of those Products because she has been misled to believe that they contain slack-fill.

85.     The 9th Circuit has recently embraced this approach to analyze injury in consumer fraud cases:

We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. [*Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1148 (2009).] Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. *See, e.g.*, [*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)]; *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[U]nless the manufacturer or seller has been enjoined from making the same representation, [the] consumer . . . won't know whether it makes sense to spend her money on the product.").

*Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103, 1115 (9th Cir. 2017).

86.     The Court should follow the lead of California Federal Courts and recognize that a plaintiff may be injured after she learns of a manufacturer's deception, even though she is unlikely to fall victim to the exactly the same scheme again in exactly the same manner. To hold otherwise would immunize manufacturers and render injunctive relief impossible in consumer fraud class action lawsuits – if learning of a deception removed a Plaintiff's standing to seek an injunction, then wrongdoers could violate the law with impunity, defeating the purpose of consumer protection statutes.

87.     Plaintiff GREEN, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

88.      Plaintiff GREEN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

89.      Plaintiff GREEN brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

90.      Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful acts or practices, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

91.      By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Product so that it appears to contain more in the packaging than is actually included.

92.      The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Product in packages containing non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA (21 U.S.C. § 343(d)) in that said Product is misbranded.

93.      The foregoing deceptive acts and practices were directed at consumers.

94.    Plaintiff GREEN and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff GREEN and the other Class members suffered monetary losses from the purchase of Product, i.e., receiving less than the capacity of the packaging due to non-functional slack-fill in the Product. In order for Plaintiff GREEN and Class members to be made whole, they must receive a refund of the purchase price of the Product equal to the percentage of non-functional slack-fill in it.

**COUNT III**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1) (FALSE ADVERTISING)**

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

95.    This claim is brought on behalf of Plaintiff GREEN and members of the Class against Defendant.

96.    Plaintiff GREEN realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

97.    Defendant has been and/or is engaged in the "conduct of . . . business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

98.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . " N.Y. Gen. Bus. Law § 350-a(1).

99.     Pursuant to the FDCA as implemented through 21 C.F.R. § 100.100, package size is an affirmative representation of quantity. Thus, the non-functional slack-fill in Defendant's Product constituted false advertising as to the quantity of candy contained therein. Defendant caused this false advertising to be made and disseminated throughout New York and the United States. Defendant's false advertising was known, or through the exercise of reasonable care should have been known, by Defendant to be deceptive and misleading to consumers.

100.     Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

101.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its misrepresentations and/or omissions regarding the Product, as set forth above, were material and likely to deceive a reasonable consumer.

102.     Plaintiff GREEN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Product, Plaintiff GREEN and members of the Class relied on the misrepresentations regarding the quantity of the Product that was actually candy rather than non-functional slack-fill. Those representations were false and/or misleading because the Product contains substantial hidden non-functional slack-fill. Plaintiff and the Class were deprived of the benefit of their bargains when they purchased the Product and received mostly air.

103.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff GREEN and members of the Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

104.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

105.    Through its product packaging, Defendant intentionally made materially false and misleading representations regarding the quantity of candy that purchasers were actually receiving.

106.    Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations and did not know the truth about the Product at the time they purchased it.

107.    Defendant knew of its false and misleading representations. Defendant nevertheless continued to promote and encourage customers to purchase the Product in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

108.    Had Plaintiff and the Class known the actual amount of candy they were receiving, they would not have purchased the Product.

109.    Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

110.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund compensating them for the shortfall in the Products they purchased.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiff and all members of the Class in an amount up to the purchase price of the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

# DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


Dated: February 1, 2018

Respectfully submitted,


/s/ *C.K. Lee*
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*