UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DOMINIQUE GREEN,
*on behalf of herself and others similarly situated*,

                        Plaintiffs,

    v.

SWEETWORKS CONFECTIONS, LLC,

                        Defendants.

_____

Civil Action No. 1:18-cv-00902-LTS

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT SWEETWORKS CONFECTIONS, LLC

HARRIS BEACH PLLC
*Attorneys for Defendant*
*SweetWorks Confections, LLC*
99 Garnsey Road
Pittsford, New York 14534
585-419-8800

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL AND PROCEDURAL HISTORY .........................................................................3

ARGUMENT.........................................................................................................................6

    A.  Rule 12(b)(1) Motion to Dismiss Standard.........................................................6

    B.  Rule 12(b)(6) Motion to Dismiss Standard.........................................................7

POINT I     THE COURT SHOULD DISMISS THE COMPLAINT
               BECAUSE IT LACKS SUBJECT-MATTER JURISDICTION .......................8

    A.  The Court Lacks Subject-Matter Jurisdiction under the Class
        Action Fairness Act...................................................................................8

    B.  The Court Should Dismiss This Action Because At Least One of
        the Exceptions to CAFA Jurisdiction Applies.........................................9

POINT II    PLAINTIFF LACKS STANDING FOR AN INJUNCTION ...........................12

POINT III   THE COURT SHOULD DISMISS OR STRIKE THE
               NATIONWIDE CLASS CLAIMS FROM THE COMPLAINT......................14

    A.  N.Y. General Business Law Applies Only to Transactions in
        New York State.........................................................................................14

    B.  Plaintiff Lacks Standing to Assert Claims Under the Laws of
        Other States...............................................................................................15

POINT IV  THE COURT SHOULD DISMISS THE COMPLAINT
               BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON
               WHICH RELIEF MAY BE GRANTED .........................................................15

    A.  Plaintiff Fails Plausibly to Allege the Current Box Has
        Nonfunctional Slack-Fill .........................................................................15

        1.  Plaintiff Fails Plausibly to Allege that the Current Box Does
             Not Meet At Least One of the Six Acceptable Forms of
             Functional Slack-Fill .................................................................18

B.      No Reasonable Consumer Would be Materially Misled by Sixlets Packaging ............................................................................................. 20

C.      Plaintiff Fails Plausibly to Allege Injury ........................................................... 22

POINT V      PLAINTIFF FAILS PLAUSIBLY TO ALLEGE A FRAUD CLAIM ............................................................................................................ 24

CONCLUSION ................................................................................................................................. 25

# TABLE OF AUTHORITIES

Page

**Cases**

*ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ......................................................................12

*Alce v. Wise Foods, Inc.*, No. 17 CIV. 02402 (NRB),
2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018)................................................................passim

*Anirudh v. CitiMortgage, Inc.*,
598 F. Supp. 2d 448 (S.D.N.Y. 2009)..........................................................................9, 10, 11

*Arar v. Ashcroft*, 532 F.3d 157 (2d Cir. 2008),
*aff'd*, 666 F. App'x 26 (2d Cir. 2016)..................................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................7, 17, 18

*Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182 (S.D.N.Y. 2016) ...........................................19

*Beauvoir v. Israel*, 794 F.3d 244 (2d Cir. 2015).......................................................................2, 5, 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),
*aff'd*, 700 F. App'x 22 (2d Cir. 2017).............................................................................7, 17, 25

*Bimont v. Unilever*, No. 14-cv-7749,
2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015) ........................................................................1

*Brook v. UnitedHealth Group, Inc.*, No. 06 CV 12954(GBD),
2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007) ......................................................................10

*Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460,
2016 WL 5886886 (N.D. Cal. Oct. 7, 2016).....................................................................20, 21

*Claridge v. N. Am. Power & Gas, LLC*,
No. 15-CV-1261 PKC, 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015)......................................8

*Daniel v. Mondelez Int'l, Inc.*, No. 17–CV–00174 (MKB),
2018 WL 1087953 (E.D.N.Y. 2018) ..............................................................................passim

*Daniel v. Tootsie Roll Industries, LLC*, 1:17-cv-07541 .............................................................24

*Doyle v. MasterCard Int'l Inc.*, No. 15 CV 9360-LTS,
2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016)......................................................................7

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) .................................................................22

*Elkind v. Revlon Consumer Prod. Corp.*,
   No. 14-CV-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)..........................................2, 12

*Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209 (E.D.N.Y. 2016)................................................1, 7, 8

*Goshen v. Mutual Life Insurance Co. of New York*,
   98 N.Y.2d 314 (2002) ........................................................................................................14

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.* ("*HSBC*"),
   1 F. Supp. 3d 34 (E.D.N.Y.), *reconsideration granted on other grounds*,
   14 F. Supp. 3d 99 (E.D.N.Y. 2014) ...................................................................................15

*Izquierdo v. Mondelez Int'l Inc.*, No. 16-cv-04697,
   2016 WL 6459832 (S.D.N.Y. 2016)..............................................................................passim

*Jurgensen v. Felix Storch, Inc.*, No. 12-cv-1201,
   2012 WL 2354247 (S.D.N.Y. June 14, 2012) ..................................................................2, 15

*Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5 (2d Cir. 2012) .........................................2, 14

*L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ................................................7

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012).......................................................12

*Mattera v. Clear Channel Communications, Inc.*,
   239 F.R.D. 70 (S.D.N.Y. 2006) ...................................................................................9, 10, 11

*Matthews v. N.F.L. Mgmt. Council*,
   688 F.3d 1107 (9th Cir. Aug. 6, 2012)................................................................................24

*Merisier v. Herr Foods Inc.*, Case No. 1:16-cv-06350-FB-RER ...................................................5

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008) ...........................................6

*O'Connor v. Henkel Corp.*, No. 1:14-cv-05547-ARR-MDG,
   2015 WL 5922183 (E.D.N.Y. Sept. 21, 2015)......................................................................1

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ............................................................20

*Perry v. NYSARC, Inc.*, 424 F. App'x 23 (2d Cir. 2011) ...........................................................23

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)...........................................................................7

*Siloam Springs Hotel LLC v. Century Surety Co.*,
   781 F.3d 1233 (10th Cir. 2015) ...........................................................................................8

*Steinberg v. Elkman*, No. 15CV278-LTS-DCF,
2016 WL 796870 (S.D.N.Y. Feb. 22, 2016) ...........................................................6

*Steinberg v. Prof'l Recovery Servs., Inc.*, No. 12-CV-1799-L DHB,
2012 WL 3025165 (S.D. Cal. July 24, 2012) ...........................................................9

*United States ex rel. Hayes v. Allstate Ins. Co.*,
686 F. App'x 23 (2d Cir. 2017) ............................................................................25

*United States v. 174 Cases*, 287 F.2d 246 (3d Cir. 1961) ...........................................22

*United States v. 174 Cases*, 195 F. Supp. 326 (D.N.J. 1961),
*aff'd*, 302 F.2d 724 (3d Cir. 1962) .........................................................................22

*United States v. Akinrosotu*, 637 F.3d 165 (2d Cir. 2011) ........................................24

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
No. 14 CV 3876-LTS, 2017 WL 395206
(S.D.N.Y. Jan. 27, 2017) (Taylor Swain, J.)
(denying leave to amend where such amendment would be futile),
*aff'd*, No. 17-598, 2018 WL 565780 (2d Cir. Jan. 26, 2018) ....................................25

*Y.D. v. New York City Dep't of Educ.*, No. 14CV1137-LTS,
2016 WL 698139 (S.D.N.Y. Feb. 19, 2016) ......................................................7, 16


**Statutes**

28 U.S.C. § 1331 ..................................................................................................11

28 U.S.C. § 1332(d) ...............................................................................................8

28 U.S.C. § 1332(d)(2) .......................................................................................1, 8

28 U.S.C. § 1332(d)(3) .................................................................................1, 9, 11

28 U.S.C. § 1332(d)(4) .......................................................................................1, 9

28 U.S.C. § 1332(d)(4)(A) ...............................................................................10, 11

28 U.S.C. § 1332(d)(4)(B) ...............................................................................10, 11

28 U.S.C. § 1332(d)(5) .......................................................................................1, 8

28 U.S.C. § 1332(d)(10) .....................................................................................8, 9

GBL § 349 ................................................................................................ 2, 6, 20, 22

GBL § 349(h) ..............................................................................................22

GBL § 350 ...................................................................................................2, 6

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................17

Fed. R. Civ. P. 9(b) ....................................................................................24

Fed. R. Civ. P. 12 .........................................................................................1

Fed. R. Civ. P. 12(b)(1) .............................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

**Regulations**

21 C.F.R. § 100.100 ...............................................................................17, 22

21 C.F.R. § 100.100(a) .........................................................................passim

21 C.F.R. § 100.100(a)(1) ...........................................................................19

21 C.F.R. § 100.100(a)(6) ...........................................................................19

58 Fed. Reg. 2957-01, at 2959 (Jan. 6, 1993).............................................18

58 Fed. Reg. 2957-01, at 2964....................................................................13, 18

Defendant SweetWorks Confections, LLC ("Defendant" or "SweetWorks") respectfully submits this Memorandum of Law in support of its motion pursuant to Fed. R. Civ. P. 12 to dismiss the Class Action Complaint ("Complaint") in its entirety.

## PRELIMINARY STATEMENT

This case arises from Plaintiff's purchase of a $0.50 theater box of Sixlets candy that allegedly contains nonfunctional slack-fill. "Nonfunctional slack-fill" is the empty space in a package that is filled to less than its capacity that does not serve one of the enumerated functional slack-fill purposes set forth in 21 C.F.R. § 100.100(a). Plaintiff's counsel has brought over three dozen slack-fill cases in federal court challenging a variety of consumer goods, but none of the cases have survived a motion to dismiss.[1] Because the Court lacks subject matter jurisdiction and no reasonable consumer would find the actual packaging of Sixlets misleading, the outcome of this case should be no different.

*First*, this Court should dismiss the Complaint because the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under the Class Action Fairness Act, the Court lacks jurisdiction if there is no minimal diversity among the parties. 28 U.S.C. § 1332(d)(2), (5). Both parties to this action are New York citizens. Furthermore, because the transaction took place in New York and Plaintiff's claim arises under New York law, Plaintiff cannot defeat any of the exceptions to jurisdiction under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(3)-(4).

*Second*, Plaintiff lacks standing to seek an injunction because Plaintiff's knowledge of the allegedly misleading packaging of Sixlets candy eliminates the possibility that Plaintiff will

---

[1] *See, e.g.*, *Alce v. Wise Foods, Inc.*, No. 17 CIV. 02402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) (potato chips); *Daniel v. Mondelez Int'l, Inc.*, No. 17–CV–00174 (MKB), 2018 WL 1087953 (E.D.N.Y. 2018) (theater box candy); *Izquierdo v. Mondelez Int'l Inc.*, No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. 2016) (same); *Bimont v. Unilever*, No. 14-cv-7749, 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015) (deodorant); *O'Connor v. Henkel Corp.*, No. 1:14-cv-05547-ARR-MDG, 2015 WL 5922183 (E.D.N.Y. Sept. 21, 2015) (same); *Fermin v. Pfizer*, 215 F. Supp. 3d 209 (E.D.N.Y. 2016) (pain reliever).

unknowingly fall victim to the alleged deception again.  *See, e.g.*, *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015).

   *Third*, the Court should dismiss Plaintiff's nationwide class claims or strike them from the Complaint because Plaintiff brings them pursuant to N.Y. General Business Law §§ 349-350, which apply to acts that occur *in New York state*.  *See Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012).  In addition, Plaintiff lacks standing to bring claims under the laws of states where Plaintiff has never lived.  *See Jurgensen v. Felix Storch, Inc.*, No. 12-cv-1201, 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012).

   *Fourth*, the Court should dismiss the Complaint because it fails plausibly to allege nonfunctional slack-fill, consumer deception, or a price premium.  Plaintiff misrepresents the slack-fill in current Sixlets theater boxes and makes no allegations as to the state of slack-fill in the boxes as they are sold in stores.  *See* 21 C.F.R. § 100.100(a); *Daniel v. Mondelez Int'l, Inc.*, No. 17–CV–00174 (MKB), 2018 WL 1087953, at *6 (E.D.N.Y. Feb. 26, 2018).  Moreover, reasonable consumers, acting reasonably would not be misled by Sixlets packaging.  *See Alce v. Wise Foods, Inc.*, No. 17 CIV. 2402 (NRB), 2018 WL 1737750, at *9–10 (S.D.N.Y. Mar. 27, 2018).  Nor can Plaintiff plausibly allege a price premium for a $0.50 box of Sixlets because Plaintiff fails to show that any alleged premium was the result of SweetWorks setting the price or benefiting from any price inflation.  *See Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).  The Court may also judicially notice that $0.50 for 3.5 ounces of theater box candy could not include *any* price premium.  *See Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015).

   *Fifth*, Plaintiff fails plausibly to allege a claim for fraudulent misrepresentation because Plaintiff fails to set forth any allegations as to the actual slack-fill in current Sixlets theater

boxes.  *See Izquierdo*, 2016 WL 6459832, at *9.  Furthermore, since the current packaging contains no misrepresentations and the Sixlets theater boxes prominently display the net weight on the front of the box, Plaintiff cannot contend that they justifiably relied on any alleged misrepresentation as to the current packaging of Sixlets.  *See Daniel*, 2018 WL 1087953, at *14.

For all of these reasons, the Court should dismiss the Complaint with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

Sixlets Chocolatey Candies are round chocolate-flavored candies with a shiny, fragile, color-coated shell in various colors.  Declaration of Rebecca Stout dated April 17, 2018 ("Stout Decl.") ¶ 6.  The candy is approximately seven-sixteenths of one inch (0.4375 inches) in diameter.  *Id.* ¶ 7.  The candy is packaged in a clear cellophane bag ("clear bag") that contains a small amount of air that protects the color-coated shell of the candy, which is prone to chipping. *Id.* ¶ 10 & Exhibit A (photos).  The clear bag is then packaged inside a theater box.  *Id.*  The theater box has the approximate dimensions of 6.625 inches by 3.25 inches by 1 inch, giving each box a volume of about 21.531 cubic inches with 3.5 oz. of candy per box (the "Current Box").  Complaint dated February 1, 2018 ("Compl.") ¶ 1.  Stout Decl. ¶ 8, Ex. A.

Plaintiff, a citizen of New York, contends that she purchased a theater box of Sixlets candy at a Kmart in Manhattan for $0.50.  Compl. ¶ 17.[2]  However, SweetWorks's "deceptive conduct" financially injured Plaintiff "because she did not receive the quantity that she paid for and was promised" and because there was "60% slack-fill" in the box.  Compl. ¶ 17.

Plaintiff supports her claim that the Current Box contains "nonfunctional slack-fill" by comparing the Current Box to a second Sixlets theater box of a lower volume that she alleges stores sell alongside the Current Box.  Compl. ¶¶ 6, 42.  In 2016, SweetWorks ceased

---

[2] As of April 2, 2018, no Sixlets in theater boxes could be found at the Kmart where Plaintiff allegedly purchased them.  Declaration of Daniela Marando dated April 17, 2018.

distribution of the lower volume Sixlets theater box (the "<u>Discontinued Box</u>").  Stout Decl. ¶ 9.
SweetWorks replaced the Discontinued Box with the Current Box containing the clear bag in
2016.  *Id.* ¶¶ 9-10.  SweetWorks could not continue using the Discontinued Box, which is one-
half inch wide and only slighter wider than the seven-sixteenths diameter of the round Sixlets
candy.  *Id.* ¶ 11.  Consequently, the Discontinued Box could not have enclosed the clear bag and
air that protects the individual Sixlets.  *Id.* & Ex. B.  The Sixlets and the protective clear bag and
air essentially fill the Current Box.  *Id.* ¶ 14 & Ex. A.

However, the Complaint contains no allegations to this effect.  Indeed, the protective
clear bag with air, a form of functional slack-fill, is not mentioned *anywhere* in the Complaint.
Plaintiff specifically excluded it in each description of the packaging in the Complaint.
Compl. ¶ 1 ("The candy is sold in a box with the approximate dimensions 6.625 inches by
3.25 inches by 1 inch, giving each box a volume of about 21.531 cubic inches with 3.5 oz. of
candy per box (the 21.531 cubic inches box and the candy enclosed within together comprising
the "Product").", ¶ 2 ("The Product is mass produced and packaged in a non-transparent box of
standardized size and composition, with a standardized quantity of candy in each box."), ¶ 26
("The Sixlets Product package is a box that is approximately 6.625 inches by 3.25 inches by
1 inch with a volume of approximately 21.531 cubic inches. If the box is oriented such that it is
6.625 inches vertically, then the candy only fills the bottom 2.625 inches of the box, with
4 vertical inches of air.").

To bolster its misleading packaging description, Plaintiff includes multiple photographs
in the Complaint, but does not include *any* photographs showing the contents of the
Discontinued Box or the Current Box (even though Plaintiff includes a photo of the inside of a
Milk Duds box).  As a substitute, Plaintiff provides a photograph of the *outside* of the boxes, and

includes a computer-generated line, crossing the front outside panel of the boxes, allegedly representing the highest point of the candy as it rests inside the boxes when the boxes are oriented vertically.   Compl. ¶¶ 26-28.   However, as Exhibit A shows, Plaintiff's computer-generated line blatantly misrepresents the level of slack-fill in the Current Box.   *See* Stout Decl., Ex. A.[3]  In order for the slack-fill in the Current Box to be as low as Plaintiff represents with their computer-generated line on the front panel of the box, Plaintiff would have had to take several steps including opening the Current Box, removing the clear bag, opening the clear bag, emptying the candies from the clear bag, and pouring the candies inside the Current Box without the clear bag.[4]

For Plaintiff, the existence of the Discontinued Box negates any need for allegations (or factually accurate photographs) in the Complaint as to the degree of allegedly nonfunctional slack-fill in the Current Box.   Compl. ¶ 30 (Discontinued Box "has 11% slack-fill. . . . Slack-fill in excess of 11% . . . is [therefore] certainly non-functional.").   However, Plaintiff does not allege anywhere the degree of nonfunctional slack-fill in the Discontinued Box or the Current Box.   Instead Plaintiff concedes that the slack-fill in the Discontinued Box "may or may not all be functional" and that some of the slack-fill in the Current Box "may have functional justifications" related to packaging and settling.   Compl. ¶¶ 27, 30.   As noted above, however,

---

[3]  The Court may take judicial notice of the photographs demonstrating the actual state of the boxes. *See Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015) (allegations need not be taken as true where allegations are directly contradicted by facts of which the court can take judicial notice).

[4]  Counsel's lack of candor is consistent with accusations made against him in other slack-fill cases.  *See, e.g.*, Decl. of Sandra Hanian in Support of Defendants' Mot. to Dismiss Class Action Compl., or, in the Alternative, to Strike Nationwide Class Allegations at ¶ 3(c)-(d), *in Izquierdo v. Mondelez Int'l, Inc.*, Case No. 1:16-cv-04697-CM (Docket 17) ("stacking" candies in bag "on top of each other" for appearance of slack-fill in candy theater box); Brief in Support of Mot. to Dismiss Pursuant to FRCP 12(b)(6) at 6 n.3, *in Merisier v. Herr Foods Inc.*, Case No. 1:16-cv-06350-FB-RER (Docket 16-1) (incorrect measurements of potato chip bags).

Plaintiff fails to allege the degree to which *any* of the slack-fill in the Current Box with the clear bag is functional. Compl. ¶¶ 37-41.

On February 1, 2018, Plaintiff commenced this action, asserting claims for deceptive and unfair trade practices and false advertising under New York General Business Law §§ 349, 350, and common law fraud. Compl. ¶¶ 77-103.

## ARGUMENT

### A. Rule 12(b)(1) Motion to Dismiss Standard

Subject matter jurisdiction "is the threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Steinberg v. Elkman*, No. 15CV278-LTS-DCF, 2016 WL 796870, at *3 (S.D.N.Y. Feb. 22, 2016) (Taylor Swain, J.) (alteration in original) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)), *aff'd*, 666 F. App'x 26 (2d Cir. 2016). On a motion to dismiss, "'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Id.* (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). "However, '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (alteration in original) (quoting *Morrison*, 547 F.3d at 170). Moreover, "such a showing may not be 'made by drawing from the pleadings inferences favorable to the party asserting' subject matter jurisdiction." *Id.* (quoting *Morrison*, 547 F.3d at 170). "In determining whether subject matter jurisdiction of the claims exists, the court may consider evidence outside the pleadings." *Id.* (citing *Morrison*, 547 F.3d at 170).

**B.  Rule 12(b)(6) Motion to Dismiss Standard**

On motion to dismiss, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Doyle v. MasterCard Int'l Inc.*, No. 15 CV 9360-LTS, 2016 WL 9649874, at *1 (S.D.N.Y. Dec. 15, 2016) (Taylor Swain, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *aff'd*, 700 F. App'x 22 (2d Cir. 2017).  This standard is met "when the factual content in the complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'[N]aked assertions' or 'a formulaic recitation of the elements of a cause of action' does not suffice."  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  A court "accepts as true the non-conclusory factual allegations" and "draws all inferences in the Plaintiff's favor."  *Id.* (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007)).  Yet, "[i]f the plaintiff has not 'nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed.'"  *Y.D. v. New York City Dep't of Educ.*, No. 14CV1137-LTS, 2016 WL 698139, at *3 (S.D.N.Y. Feb. 19, 2016) (Taylor Swain, J.) (second and third alterations in original) (quoting *Twombly*, 550 U.S. at 570).  Plausibility depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).  However, "[t]he Court is not required to credit conclusory allegations or legal conclusions."  *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

**POINT I**

**THE COURT SHOULD DISMISS THE COMPLAINT
BECAUSE IT LACKS SUBJECT-MATTER JURISDICTION**

**A.  The Court Lacks Subject-Matter Jurisdiction under the Class Action Fairness Act**

Plaintiff contends that this Court has diversity jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA").  Compl. ¶ 13.  CAFA confers original federal jurisdiction over class actions involving (1) classes of 100 or more plaintiffs, (2) an aggregate amount in controversy of at least $5,000,000; and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states.  28 U.S.C. § 1332(d)(2), (5); *see, e.g.*, *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016).

Here, the Court should dismiss the Complaint because Plaintiff fails to allege minimal diversity.  The Complaint identifies a *single* Plaintiff in this action: Dominique Green who "is, and at all relevant times hereto has been, a citizen of the state of New York and a resident of New York County."  Compl. ¶ 17.  Under 28 U.S.C. § 1332(d)(10), a limited liability company ("LLC") like SweetWorks is an "unincorporated association" and it "shall be deemed to be a citizen of the State where it has its principal place of business *and* the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10); *see Claridge v. N. Am. Power & Gas, LLC*, No. 15-CV-1261 PKC, 2015 WL 5155934, at *2 (S.D.N.Y. Sept. 2, 2015) (citing 1332(d)(10)); *see also Siloam Springs Hotel LLC v. Century Surety Co.*, 781 F.3d 1233, 1237 & n. 1 (10th Cir. 2015).  SweetWorks is a New York citizen because New York is its principal place of business.  Stout Decl. ¶ 2.  Thus, one plaintiff and one defendant are not citizens of different states, and the Court lacks jurisdiction under CAFA to hear the Complaint.  *See* 28 U.S.C. § 1332(d)(2).

Furthermore, Plaintiff's allegations as to SweetWorks's citizenship are entirely deficient.  Plaintiff alleges that SweetWorks is a "corporation organized under the laws of New York" with

its "headquarters" in Buffalo, New York.   Compl. ¶ 19.   SweetWorks is actually an LLC organized under the laws of Delaware.   *See* Stout Decl. ¶ 2.   Plaintiff further alleges that SweetWorks has its headquarters in Buffalo, New York, but "headquarters" are not necessarily the principal place of business with respect to the citizenship of an unincorporated association. *See, e.g.*, 28 U.S.C. § 1332(d)(10); *Steinberg v. Prof'l Recovery Servs., Inc.*, No. 12-CV-1799-L DHB, 2012 WL 3025165, at *2 (S.D. Cal. July 24, 2012) ("[B]y not alleging Defendant's principal place of business, the Court cannot establish that it has diversity jurisdiction over this class action.").   Because Plaintiff fails to allege SweetWorks's status as a Delaware LLC with New York as its principal place of business, Plaintiff fails to establish that the Court has jurisdiction over SweetWorks, and the Complaint should be dismissed.

### B.  The Court Should Dismiss This Action Because At Least One of the Exceptions to CAFA Jurisdiction Applies

Even if Plaintiff had properly alleged minimal diversity, and Plaintiff has not, CAFA sets forth three exceptions to federal subject-matter jurisdiction: (1) the "local controversy" exception, (2) the "home state controversy" exception, and (3) the "interests of justice" exception.  *See* 28 U.S.C. § 1332(d)(3)-(4); *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 450 (S.D.N.Y. 2009); *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70, 77 (S.D.N.Y. 2006).   Under the local controversy exception, a district court must decline jurisdiction under CAFA if: (1) "more than two-thirds of the putative class members are citizens of the state in which the action was originally filed"; (2) "there is at least one defendant from whom 'significant relief' is sought by the class members, whose alleged conduct forms a 'significant basis' for the asserted claims, and who is a citizen of the state in which the action was originally filed"; (3) the principal injuries suffered by the class were incurred in the state in which the action was originally filed"; and (4) "no other class action asserting the same or

similar factual allegations has been filed against any of the defendants within the past three years." *Mattera.*, 239 F.R.D. at 77 (citing 28 U.S.C. § 1332(d)(4)(A)).

The home state controversy exception directs district courts to "decline jurisdiction if 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Anirudh*, 598 F. Supp. 2d at 450 (quoting *Brook v. UnitedHealth Group, Inc.*, No. 06 CV 12954(GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007)); *see* 28 U.S.C. § 1332(d)(4)(B); *Mattera*, 239 F.R.D. at 77.

Finally, a district court may decline jurisdiction if: "in the interests of justice and looking at the totality of the circumstances," "greater than one-third but less than two-thirds of the members" of a putative class "and the primary defendants are citizens of the State in which the action was originally filed" and based on a consideration of—

> (A) whether the claims asserted involve matters of national or interstate interest;

> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3); *Mattera*, 239 F.R.D. at 77-78 (quoting same).  Although Plaintiff bears the burden of proving subject matter jurisdiction, under CAFA, a "defendant bears the burden of proving that an exception to CAFA applies." *Anirudh*, 598 F. Supp. 2d at 451.

Here, at least one of the exceptions to CAFA jurisdiction must apply, and the Court therefore should dismiss the Complaint for lack of subject matter jurisdiction.  Although Plaintiff alleges that "a member of the putative class is a citizen of a different state than Defendant" and they "believe" there are thousands of members (Compl. ¶¶ 13, 66), Plaintiff identifies only two New York citizens as parties to this action – Plaintiff and SweetWorks.  Compl. ¶ 17.  If the only parties are New York citizens, the only transaction took place in New York, and the matter is governed by New York law, then, by definition, Plaintiff cannot defeat *any* of the exceptions to CAFA jurisdiction, and at least one must apply to the case.  28 U.S.C. § 1332(d)(3) (one-third to two-thirds of plaintiffs of same state, defendant from same state, claims governed by same state law), § 1332(d)(4)(A)-(B) (greater than two-thirds from same state as defendant, alleged injuries in same state, claims governed by same state law).[5]

Thus, Plaintiff has not properly alleged CAFA jurisdiction, and SweetWorks has shown at least one of the exceptions to it applies.  The Court should dismiss the Complaint.[6]

---

[5]  Plaintiff's "alternative" New York Class fails for the same reason: the case would be a New York action with New York parties, under New York law, based on a New York transaction.  *See* 28 U.S.C. §§ 1332(d)(3); 1332(d)(4)(A)-(B).  Furthermore, limited to New York transactions, Plaintiff would likely fail to qualify for the $5 million CAFA jurisdictional threshold by a significant margin.

[6] Plaintiff further alleges jurisdiction under 28 U.S.C. § 1331 (Compl. ¶ 14), but Plaintiff does not identify any provision of the Constitution, laws or treaties which serve as the basis for such jurisdiction.

**POINT II**

**PLAINTIFF LACKS STANDING FOR AN INJUNCTION**

The Complaint requests injunctive relief because Plaintiff is "at risk" for "several types of future injury" including "continued injury because she is no longer able to rely on Defendant's representations" and "may hesitate to purchase Defendant's Products even if it ceases its unlawfully labeling the Products by packaging them with misleading slack-fill." Compl. ¶ 84. Plaintiff "could not uninhibitedly take advantage of those Products because she has been misled." *Id.* Knowing that the Complaint does not sufficiently allege an injury to pass muster on motion to dismiss in the Second Circuit, Plaintiff asks the Court to adopt the Ninth Circuit approach that "embrace[s]" the idea "that a plaintiff may be injured after she learns of a manufacturer's deception, even though she is unlikely to fall victim to the exactly [*sic*] the same scheme again." *Id.* ¶¶ 85-86.

For an injunction, the Second Circuit requires that the "threatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (quoting *ACLU v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)). "In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Daniel v. Mondelez Int'l, Inc.*, No. 17–CV–00174 (MKB), 2018 WL 1087953, at *4 (E.D.N.Y. 2018) (quoting *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012)).

However, since "Plaintiffs are now aware of the alleged misrepresentations that they challenge, . . . there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015). The

FDA reached the same conclusion twenty-five years ago, explaining that "since consumers can identify offending packages by brand name and refrain from purchasing that product in the future . . . it is unlikely that utility losses from this source are significant."   Proposed Rule, 58 Fed. Reg. 2957-01, at 2964.   Furthermore, every federal court in New York confronted with whether a plaintiff in a slack-fill case had standing for an injunction reached the same conclusion: they do not.   *See, e.g.*, *Alce v. Wise Foods, Inc.*, No. 17 CIV. 2402 (NRB), 2018 WL 1737750, at *6 (S.D.N.Y. Mar. 27, 2018) (standing for injunction "meritless" because "no danger that they will be misled in the future"); *Daniel*, 2018 WL 1087953, at *5 (annoyance at being unable to confidently purchase product in future insufficient); *Izquierdo*, 2016 WL 6459832, at *3 (no likelihood of future injury).

In *Izquierdo*, plaintiffs made the same allegations, and the court concluded that it established three possible scenarios: (1) "Izquierdo may never see the Candy again, perhaps because he will avoid AMC movie theaters; (2) Izquierdo will not purchase the Candy because it is still being offered in the same packaging; or (3) Izquierdo will purchase the Candy with improved packaging."   2016 WL 6459832, at *5.   Under all three circumstances Izquierdo "failed to plead a real or immediate threat of injury" and thus "failed to plead standing to seek an injunction."   *Id.*   Here, the Complaint contains the same allegations: Plaintiff may never see the Current Box again, and, if Plaintiff did, Plaintiff could not confidently rely on the truthfulness of the packaging, but will purchase the Current Box if SweetWorks changes the packaging.   Compl. ¶¶ 18, 84-86.   Under all three circumstances, Plaintiff alleges only *possible* future injury and therefore lacks standing for an injunction.   *See Izquierdo*, 2016 WL 6459832, at *5.

The Court should dismiss Plaintiff's claim for an injunction.   *Id.*

## POINT III

## THE COURT SHOULD DISMISS OR STRIKE THE
## NATIONWIDE CLASS CLAIMS FROM THE COMPLAINT

### A.  N.Y. General Business Law Applies Only to Transactions in New York State

Plaintiff purportedly brings claims under New York General Business Law on behalf of a "Nationwide Class."  Compl. ¶¶ 63, 77-110.  However, "GBL § 349 prohibits [d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*."  *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) (emphasis added) (alteration in original) ("[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." (quoting *Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314, 325 (2002))) (internal quotation marks omitted).  N.Y. GBL § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*" (emphasis added).  The Complaint fails to state a claim under either provision if it alleges that plaintiff purchased the product at issue in a different state even if the defendant "allegedly conceived and orchestrated" the deceptive scheme or marketing misrepresentation in or from New York state and collected fees in New York state.  *See id.* at 7-8 (internal citations omitted) (citing *Goshen*, 98 N.Y.2d at 325-26).  Here, the Complaint alleges a single transaction in New York state, and makes no allegations as to any transactions in other states, which Plaintiff could not bring under New York law anyway.  *See id.*  Therefore, the Court should dismiss or strike Plaintiff's nationwide class claims for failure to state a claim. *Kaufman*, 474 F. App'x at 8-9 (dismissing non-New York class claims brought under New York law for failure to state claim).

### B.  Plaintiff Lacks Standing to Assert Claims Under the Laws of Other States

Recognizing the above, Plaintiff asserts claims "on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members." Compl. ¶¶ 76-95.  However, "named plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided."  *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.* ("*HSBC*"), 1 F. Supp. 3d 34, 50 (E.D.N.Y.), *reconsideration granted on other grounds*, 14 F. Supp. 3d 99 (E.D.N.Y. 2014); *Jurgensen v. Felix Storch, Inc.*, No. 12-cv-1201, 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012) ("[P]laintiff does not have standing to bring claims for violations of consumer fraud statutes of states other than Washington—i.e., the state where she resides."). Here, Plaintiff is a New York citizen, residing in New York, and the alleged transaction took place in New York.  The Complaint does not allege that Plaintiff lived or resided anywhere else.  Thus, Plaintiff has no standing to bring a claim for violations of laws of any other state.  *See, e.g.*, *HSBC*, 1 F. Supp. 3d at 50; *Jurgensen*, 2012 WL 2354247, at *10.

## POINT IV

## THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Plaintiff Fails Plausibly to Allege the Current Box Has Nonfunctional Slack-Fill

FDA regulations provide that slack-fill "is the difference between the actual capacity of a container and the volume of product contained therein."  21 C.F.R. § 100.100(a).  Slack-fill, however, *does not* violate FDA regulations if it is *functional*.  *See id.*  Here, Plaintiff sets forth thread-bare allegations that SweetWorks manufactures the Current Box with nonfunctional

slack-fill, but makes no allegations anywhere in the Complaint with respect to the packaging of Sixlets with the Current Box *and clear bag*. Plaintiff's argument is entirely based upon a comparison of the slack-fill, functional or otherwise, between the Discontinued Box and the Current Box *without* a clear bag. *See* Compl. ¶¶ 6, 27-32, 35-42, 55, 60-61. Plaintiff essentially alleges that the existence of the Discontinued Box with less slack-fill, functional or otherwise, "proves" that the Current Box contains more slack-fill than "necessary." Compl. ¶ 27. As a result, consumers are "tricked" into buying "less candy than they bargained for" in the Current Box. Compl. ¶ 30. Yet, Plaintiff does not allege *anywhere* in the Complaint how much nonfunctional slack-fill is in the Discontinued Box or the Current Box with the clear bag, instead conceding that for both boxes, the slack-fill may or may not be functional. Compl. ¶¶ 27, 30.

To support her case, Plaintiff photographs the Discontinued Box and the Current Box side-by-side, hoping it suggests that the boxes were sold side-by-side in December 2017 when Plaintiff made her purchase. Compl. ¶¶ 27-30, 42. However, SweetWorks stopped distributing the Discontinued Box in 2016 long before Plaintiff's purchase. Stout Decl. ¶ 9. Although it is conceivable that the Discontinued Box still could have been found on store shelves more than one year later, it is not plausible. *See Y.D. v. New York City Dep't of Educ.*, No. 14CV1137-LTS, 2016 WL 698139, at *3 (S.D.N.Y. Feb. 19, 2016) (Taylor Swain, J.) ("[I]f the plaintiff has not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." (second and third alterations in original) (internal quotation marks omitted)).

Notably, Plaintiff does not include any images in the Complaint of the contents of the boxes, relying instead on a computer generated line drawn across the outside of the front panel to indicate where the candy ends and the slack-fill begins. The implication is clear: the Discontinued Box has very little slack-fill, and the Current Box has a great deal of it.

Compl. ¶¶ 26-28.  However, any consumer who opened the Current Box would see the inside is filled with Sixlets enclosed in a protective clear bag with air.  *See* Stout Decl., Ex. A.

Yet Plaintiff's misrepresentation by omission of the Current Box and clear bag has larger implications.  Because the Complaint says *nothing* about the *actual* state of slack-fill in the Current Box with the protective clear bag and air, Plaintiff has failed to offer *any* factual allegations sufficient "to raise a right to relief above the speculative level" and therefore fails "to state a claim to relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

To bolster the slack-fill allegations, Plaintiff identifies Milk Duds as a "competitors' candy" with less slack-fill and similar box size.  Compl. ¶¶ 31, 32.  It requires no special expertise to observe that beyond the crude, inapt box size comparison, Milk Duds are *nothing* like Sixlets.  Sixlets are nearly all identical to the naked eye with their smooth, shiny exterior coating of various colors, which is subject to chipping, and the air in the clear bag reduces candy breakage.  Stout Decl. ¶¶ 6, 10; Compl. ¶ 2.  Ironically, the Complaint includes a photograph of the inside of a Milk Duds box which shows that, aside from their generally *similar* exterior, no two Milk Dud exteriors are alike.  Compl. ¶¶ 31-32.  Moreover, Sixlets and Milk Duds also vary as to the durability of the candy and size, and would therefore have very different requirements in packaging protection.  In proposing 21 C.F.R. § 100.100, the FDA specifically noted that physical differences in products could mean "differences in the physical characteristics of a given product, including the need to protect the product from breakage, and precision of filling

equipment result in a high degree of variability in the level of functional slack-fill within commodity classes."  Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 2957-01, at 2959 (Jan. 6, 1993) ("Proposed Rule"); *see Alce*, 2018 WL 1737750, at *8 ("[A] cursory inspection of the exhibits demonstrates that there are substantial differences between the products" including that the potato chip bags had different proportions, volumes, manufacturers, shales, surfaces, and ingredients); *see also* Proposed Rule, 58 Fed. Reg. at 2964 ("[T]he amount of slack-fill in general will continue to vary between packages of the *same products* (because of settling, product breakage, etc.), between *different brands of the same product* (because of different packaging technology and product characteristics), and between *different products*." (emphasis added)).

Thus, Plaintiff does not set forth any allegations as to slack-fill in the Current Box with the clear bag, and the Court should dismiss the Complaint.  *Iqbal*, 556 U.S. at 679.

1. Plaintiff Fails Plausibly to Allege that the Current Box Does Not Meet At Least One of the Six Acceptable Forms of Functional Slack-Fill

Under 21 C.F.R. § 100.100(a), slack-fill is functional and therefore permissible if: (1) the slack-fill protects the contents of the container; (2) the machines involved in packaging require the slack-fill; (3) the slack-fill is the result of settling; (4) the slack-fill is the result of the need for the package to perform a specific function, where such function is inherent to the nature of the food and is clearly communicated to consumers; (5) the slack-fill is the result of the product being packaged in a reusable container that is part of the presentation and has significant value in proportion to the product and independent of its function to hold the product (e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages); or (6) the slack-fill is

the result of an inability to increase level of fill or to further reduce the size of the package, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

Here, Plaintiff chooses not to set forth *any* allegations as to the actual slack-fill in the Current Box with the protective clear bag and air.  Moreover, Plaintiff's allegations as to the exceptions are based entirely on the hope that the existence of the Discontinued Box is a sufficient substitute for allegations regarding the degree of nonfunctional slack-fill in the Current Box with the protective clear bag and air. *See* Compl. ¶¶ 37-42.

Even assuming Plaintiff has set forth allegations demonstrating that the Current Box with the clear bag contains slack-fill, and Plaintiff has not, Plaintiff specifically fails to allege how the Current Box does not meet the first and sixth exceptions.  With respect to those exceptions, Plaintiff alleges that the existence of the Discontinued Box demonstrates that SweetWorks can protect Sixlets with "far less slack-fill" because the Discontinued Box has sufficient volume for the candy.  Compl. ¶ 37; *see* ¶ 42.  However, the Current Box and protective clear bag and air collectively protect the candy from damage routinely suffered in the Discontinued Box, and the clear bag, air, and candy do not fit inside the Discontinued Box.  Stout Decl. ¶¶ 10-11, Ex. B; *see* 21 C.F.R. § 100.100(a)(1), (a)(6).

Plaintiff does not even attempt a comparison with respect to the fifth exception, stating in threadbare fashion that the exception does not apply because "cardboard boxes are not significantly valuable."  Compl. ¶ 41.  Plaintiff's conclusory statement, without any factual support, is the epitome of a bare assertion reciting in formulaic fashion the language of the safe harbor. *See, e.g.*, *Daniel*, 2018 WL 1087953, at *6 (dismissing complaint with conclusory exception allegations); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 190–91 (S.D.N.Y. 2016)

(same); *see also Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460, 2016 WL 5886886, at \*4 (N.D. Cal. Oct. 7, 2016) (same).

Because Plaintiff does not make any allegations with respect to the Current Box or the protective clear bag and air, and because Plaintiff improperly relies on the existence of the Discontinued Box to prove slack-fill in the Current Box must be nonfunctional, Plaintiff has failed plausibly to allege nonfunctional slack-fill, and it is therefore respectfully submitted that the Court should dismiss the Complaint.

### B. No Reasonable Consumer Would be Materially Misled by Sixlets Packaging

Plaintiff fails plausibly to allege that reasonable consumers would be materially misled by the packaging of the Current Box.  N.Y. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  Section 350 prohibits false advertising under the same circumstances.  "To assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Daniel*, 2018 WL 1087953, at \*5 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see, e.g.*, *Izquierdo*, 2016 WL 6459832, at \*6.  The act or omission must be likely to *materially* mislead a reasonable consumer "acting reasonably *under the circumstances*."  *Alce*, 2018 WL 1737750, at \*9 (collecting cases); *see, e.g.*, *Daniel*, 2018 WL 1087953, at \*4 (same).

Here, a reasonable consumer acting reasonably would not consider the Current Box materially misleading under the circumstances.  *See Alce*, 2018 WL 1737750, at \*9-10; *Daniel*, 2018 WL 1087953, at \*4.  As other courts have observed, "[o]paque containers with slack-fill at the top are common in the snack market" and "consumers thus expect some slack-fill."

*Bush*, 2016 WL 5886886, at *3 (internal quotation marks and citation omitted).  Plaintiff even acknowledges this in the Complaint, explaining that "consumers have come to expect significant slack-fill in boxed candy products."   Compl. ¶ 52; *cf. Alce*, 2018 WL 1737750, at *11 ("[A]s plaintiffs acknowledge, 'consumers may have come to expect significant slack-fill in potato chips.'").   Moreover, candy boxes so often contain functional slack-fill in the form of clear bags, that a reasonable consumer would not find that materially misleading.  *See Daniel*, 2018 WL 1087953, at *1, 16 (dismissing complaint involving candy in clear bag inside theater box); *Izquierdo*, 2016 WL 6459832, at *1, 10 (same).  The Current Box with the clear bag is no different: it contains *some* slack-fill, but the slack-fill is functional.  *See* Stout Decl. ¶¶ 10-11; *see also* 21 C.F.R. § 100.100(a).  The clear bag contains air protecting individual Sixlets, and the Current Box is the requisite size for packaging the clear bag.  Stout Decl. ¶14.  Thus, the Complaint's allegation that SweetWorks misled Plaintiff with its packaging (Compl. ¶ 20) defies credulity.  *See, e.g.*, *Daniel*, 2018 WL 1087953, at *9 ("Assuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the [c]ourt cannot countenance." (internal quotation marks omitted)).

Nor are there any statements on the Current Box that materially mislead consumers with respect to the contents.  The Current Box expressly provides for 3.5 ounces of candy in a weight label that is prominently displayed on the front of the box, in large font, in a color different from the background color, and with nothing stating otherwise.  *See Alce*, 2018 WL 1737750, at *10 ("[T]he weight of the chips enclosed is prominently displayed on the front of each Product, in large sized font, in a color differentiated from the package background, and there is no allegation that the full weight represented is not actually in the bag. . . . [P]laintiffs 'provide no basis' for disregarding the clearly and prominently stated weight on the front of the packages."); *see also*

21

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (concluding "no deceptive act to be dispelled" where "weight label does not contradict other representations or inferences" on packaging and "[i]n the absence of any statement or other depiction anywhere on the package").[7]

Based on these facts, there is no probability that a significant portion of the reasonable consuming public could be misled. *See Daniel*, 2018 WL 1087953, at *7-10.

### C. Plaintiff Fails Plausibly to Allege Injury

Plaintiff further alleges that she "was injured when she paid full price for the Product but did not receive a full container. . . . Her injury was equivalent to the proportion of her purchase price that paid for non-functional slack-fill in the Product," or "$0.28." Compl. ¶ 18, 61; *see also, e.g.*, ¶¶ 17, 59, 62, 102. Plaintiff's contention is beyond belief.

An actual injury claim under GBL § 349 requires a plaintiff to "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Izquierdo*, 2016 WL 6459832, at *7 (citation omitted). Plaintiff may allege such injury as "overpayment or 'price premium,' whereby a plaintiff pays more than she would have *but for* the deceptive practice." *Id.* (citation omitted); *see, e.g.*, *Izquierdo*, 2016 WL 6459832, at *7 ("Nor is it clear that Plaintiffs' alleged injury (the price paid) flowed from any act of Mōndelez . . . ."); *see also* N.Y. Gen. Bus. Law § 349(h) ("any person who has been injured by reason of any violation of this section may bring an action in his own name").

---

[7] Anticipating this argument, Plaintiff devotes several paragraphs in the Complaint to arguing that net weight and labels may not be relied upon because they do not eliminate deception associated with slack-fill. Compl. ¶¶ 50-58. However, Plaintiff clearly contradicts the relevant caselaw set forth above, and does not cite a single slack-fill case decided after the codification of 21 C.F.R. § 100.100 in the early 1990s. Plaintiff instead cites a Third Circuit decision addressing slack-fill in 1961. *See United States v. 174 Cases*, 287 F.2d 246, 247 (3d Cir. 1961). The decision, however, provides *fewer* exceptions than § 100.100, and, on remand, the trial court found for the manufacturer. *United States v. 174 Cases*, 195 F. Supp. 326, 330 (D.N.J. 1961), *aff'd*, 302 F.2d 724 (3d Cir. 1962).

*Izquierdo* is instructive on this point.  There, the plaintiffs repeatedly alleged that they purchased the candy box for a premium, but the Court concluded that they failed to allege they had paid a price premium because, among other things, it was not "clear that Plaintiffs' alleged injury (the price paid) flowed from any act of Mōndelez; the Complaint does not state that Mōndelez—rather than the movie theater—set the price of the Candy." *Izquierdo*, 2016 WL 6459832, at *7.  Moreover, "the Complaint still fails to state that Mōndelez, and not the ultimate Candy seller, benefited from any price inflation." *Id.*  Here, as in *Izquierdo*, Plaintiff fails to allege that the price flowed from any act of SweetWorks, that SweetWorks rather than Kmart set the price of the candy, or that SweetWorks benefited from any purported price inflation.  *See id.*

Indeed, at $0.50 a box, it is difficult to imagine how Plaintiff can claim that *any* alleged deception by SweetWorks, and there was none, conceivably (much less plausibly) could have caused Plaintiff to pay a "price premium" or that SweetWorks somehow benefited from the $0.50 sale.  *See Izquierdo*, 2016 WL 6459832, at *7.  Under normal circumstances, Plaintiff's allegations must be taken as true on a motion to dismiss.  However, that rule is limited where the allegations are directly contradicted by facts of which the court can take judicial notice.  *See, e.g.*, *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015); *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011).  In other words, the Court is not required to ignore common sense.  In New York City, it is hard to imagine a circumstance where a party "overpaid" or paid a "price premium" for 3.5 ounces of theater box candy that cost $0.50.  To further illustrate the point, Plaintiff's counsel has brought three other slack-fill actions against theater box candies, and those theater box candies cost approximately three to eight times more per ounce.  *See, e.g.*, Complaint, *Izquierdo v. Mondelez Int'l Inc.*, 16-cv-04697 (0.81 ounces per dollar for a 3.5 ounce

Sour Patch Kids theater box priced at $4.29); Amended Complaint, *Daniel v. Tootsie Roll Industries, LLC*, 1:17-cv-07541 (2.34 ounces per dollar for a 3.5-ounce Junior Mints theater box priced at $1.49); Complaint, *Daniel v. Mondelez International, Inc.*, 1:17-cv-00174-MKB-SMG (2.87 ounces per dollar for a 3.1-ounce Swedish Fish theater box priced at $1.08).[8]

In sum, Plaintiff's allegations amount to mere annoyance for paying $0.50 for a theater box with functional slack-fill and should be dismissed. *See Daniel*, 2018 WL 1087953, at *5.

## POINT V

## PLAINTIFF FAILS PLAUSIBLY TO ALLEGE A FRAUD CLAIM

Plaintiff contends that SweetWorks intentionally made materially false and misleading representations regarding the quantity of candy that Plaintiff purchased at Kmart. Compl. ¶ 105. The elements of fraudulent misrepresentation are: "(1) that the defendant represented or omitted a material fact; (2) that the representation was false; (3) that the defendant knew that it was false and made it with the intention of deceiving the plaintiff; (4) that the plaintiff believed the representation to be true and justifiably acted in reliance on it and was deceived; and (5) that the plaintiff was injured." *Izquierdo*, 2016 WL 6459832, at *9 (citation omitted). Under Fed. R. Civ. P. 9(b), "a plaintiff must: (1) specify the alleged fraudulent statement; (2) identify the speaker; (3) state where, when and to whom the statement was made; and (4) explain why the statement was fraudulent." As set forth above, Plaintiff fails to provide any allegations with respect to the slack-fill in the Current Box with the protective clear bag and air, but instead relies

---

[8] As set forth by *Statistica*—a provider of market and consumer data— on its website, the average price per unit of candy of less than 3.5 ounces is $2.24, and the average price of chocolate candy boxes of more than 3.5 ounces is $3.49. An average of those two numbers is more than five times higher than the price Plaintiff claims to have paid. *Average Price Per Unit of Candy and Chocolate in the United States in 2017, by Segment (in U.S. Dollars)*, STATISTICA, https://www.statista.com/statistics/643582/average-unit-price-candy-and-chocolate-us-by-segment/ (last visited March 20, 2018). *See, e.g., Matthews v. N.F.L. Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. Aug. 6, 2012) (judicial notice of NFL website list of number of football games played); *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (judicial notice of bureau of prisons website for projected date of release).

on the existence of the Discontinued Box as proof that the Current Box must have nonfunctional slack-fill.  Plaintiff does not identify how the slack-fill in the Current Box with the protective clear bag and air deceives consumers, or how anything on the outside of the box misrepresented the box's contents.  Moreover, it is hard to conceive how Plaintiff was injured by purchasing the Current Box for $0.50.  Thus, Plaintiff's fraud claim is not plausible on its face and should be dismissed.  *See, e.g.*, *Twombly*, 550 U.S. at 555, 570; *Izquierdo*, 2016 WL 6459832, at *9.

## CONCLUSION

For all the foregoing reasons, SweetWorks respectfully requests that the Court dismiss the Complaint for lack of subject-matter jurisdiction and for failure to state a claim, that the Court deny leave to amend, and that the Court grant SweetWorks such other and further relief as this Court may deem just and proper.[9]

Dated: April 18, 2018
      Pittsford, New York

                                          HARRIS BEACH PLLC

                              By:  /S/ DANIEL E. GUZMAN
                                          Philip G. Spellane
                                        Daniel E. Guzmán
                                          Attorneys for Defendants
                                        *SweetWorks Confections, LLC*
                                        99 Garnsey Road
                                        Pittsford, New York 14534
                                        585-419-8800

---

[9] Defendant respectfully requests that the Court deny leave to amend because Plaintiff demonstrated bad faith by failing to advise the Court of the protective clear bag and thereby misrepresenting the actual slack-fill in the Current Box.  *See also, e.g.*, *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 27–28 (2d Cir. 2017) (no amendment because of bad faith where party made knowing misrepresentations in prior pleading).  Moreover, any such amendment would be futile as the Current Box does not contain any nonfunctional slack-fill or misrepresentations on the box.  *See, e.g.*, *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, No. 14 CV 3876-LTS, 2017 WL 395206, at *2–3 (S.D.N.Y. Jan. 27, 2017) (Taylor Swain, J.) (denying leave to amend where such amendment would be futile), *aff'd*, No. 17-598, 2018 WL 565780 (2d Cir. Jan. 26, 2018).

TO:    LEE LITIGATION GROUP, PLLC
Anne Melissa Seelig
C.K. Lee
30 East 39th Street
2nd Floor
New York, NY 10016
anne@leelitigation.com
cklee@leelitigation.com

294311 3324419