UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DOMINIQUE GREEN, on behalf of herself
and others similarly situated,

        Plaintiff,

  -v-                                                                        No.  18 CV 902-LTS-SN

SWEETWORKS CONFECTIONS, LLC,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominique Green brings this putative class action against SweetWorks Confections, LLC ("Defendant" or "SweetWorks"), claiming that Defendant's packaging and marketing of its Sixlets candy product ("Sixlets") is misleading.  Plaintiff's First Amended Class Action Complaint (docket entry no. 23, the "FAC") seeks injunctive relief under New York General Business Law § 349 (Count I), as well as damages for violations of New York General Business Law §§ 349, 350, and 350-a(1) (Counts II and III) and common law fraud (Count IV). Plaintiff contends that the Court has jurisdiction of this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Defendant moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings.  (Docket entry no. 31.)  The Court has reviewed thoroughly all of the parties' submissions and, for the following reasons, Defendant's motion is granted in part and denied in part.

BACKGROUND

The following factual summary is drawn from the FAC and is assumed to be true for the purposes of this motion practice.[1]

Defendant SweetWorks is a confectionary company organized under Delaware law with its principal place of business in New York. (FAC ¶ 19.) Defendant manufactures, markets and sells Sixlets, a chocolate candy product "sold across the country both at retail establishments and online." (FAC ¶¶ 1, 3.) On December 29, 2017, Plaintiff, a New York City resident, purchased a 3.5 oz. box of Sixlets for $0.50 at a Kmart store in Manhattan. (FAC ¶ 17.) Sixlets are "mass produced and packaged in a non-transparent box of standardized size and composition, with a standardized quantity of candy in each box." (FAC ¶ 2.) Each Sixlets box also contains slack-fill. (FAC ¶ 3.) Slack-fill is "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a).

Plaintiff alleges that Defendant manufactures, markets and sells Sixlets with non-functional slack-fill which "serves no legitimate purpose, and misleads consumers about the quantity of food they are purchasing." (FAC ¶ 4.) Specifically, Plaintiff avers that a 3.5 oz. box of Sixlets with dimensions of 6.625 inches by 3.25 inches by 1 inch (the "Larger Sixlets Box") contains 40% candy and 60% slack-fill. (FAC ¶¶ 1, 28.) By contrast, a 5 oz. box of Hershey's

---

[1] In connection with the instant motion practice, the parties proffer declarations and exhibits including, among other things, photographs of the Sixlets box, press releases issued by Defendant, and pages from Defendant's product catalogue. (See docket entry no. 33, Stout Decl.; docket entry no. 38, Lee Decl.) Insofar as Defendants seek dismissal of the FAC on the merits, the Court disregards these materials to the extent that they present evidence of material not described or depicted in the FAC, but the Court has considered all relevant exhibits insofar as they are proffered in connection with the parties' arguments regarding subject matter jurisdiction. See Louis Hornick & Co. v. Darbyco, Inc., 2013 WL 3819643, at *2 (S.D.N.Y. 2013) ("In considering a motion to dismiss for lack of subject matter jurisdiction . . . [t]he court need not, however, confine itself to the complaint and may consider evidence outside the pleadings.).

Milk Duds candy measuring 6.125 inches by 2.625 inches by 0.9375 inches encloses 77% candy and 23% slack-fill. (FAC ¶ 33.) Similarly, another version of the Sixlets box (the "Smaller Sixlets Box") fits 3.5 oz. of candy in a box with dimensions of 6.625 inches by 3.25 inches by 0.5 inches, and thus contains 89% candy and 11% slack-fill.[2] (FAC ¶¶ 30-31.) Plaintiff argues that the Milk Duds and Smaller Sixlets boxes "demonstrate[] that it is possible to fit a greater quantity of candy into Defendant's Sixlets Product box." (FAC ¶¶ 6, 34.) Although Plaintiff acknowledges that "some of Defendant's slack-fill may have functional justifications related to packaging requirements or the effects of settling," she contends that "Defendant's total slack-fill far exceeds the amount necessary," and therefore "almost all" of the slack-fill in the Larger Sixlets Box is non-functional. (FAC ¶ 29.)

Plaintiff brings this action on behalf of "[a]ll persons or entities in the United States who made retail purchases of [the Larger Sixlets Box] during the applicable limitations period." (FAC ¶ 64.) The FAC alleges that the exact number of class number is "unknown," but that there are likely thousands of members in the proposed class. (FAC ¶ 67.) In aid of her argument that the Court has subject matter jurisdiction of her claims, Plaintiff proffers a press release from SweetWorks which states, among other things, that Sixlets candies are "available at retailers across the U.S." (Lee Decl. Ex. A.) Plaintiff also proffers a product catalog and website printout indicating that Sixlets are available for purchase on the internet and in bulk quantities. (Lee Decl. Exs. C, D.)

Plaintiff alleges that class members were injured by Defendant's packaging of Sixlets because they "paid full price . . . but did not receive a full container." (FAC ¶ 18.)

---

[2] The FAC alleges that Sixlets in the Larger Box are "packaged in a clear cellophane bag," but makes no similar allegation regarding the Smaller Sixlets Box. (See FAC ¶ 26.)

Plaintiff avers that, had she known that the Larger Sixlets Box contained non-functional slack-fill, she "would not have bought the [Larger Sixlets Box] at the given price." (FAC ¶ 47.) Thus, Plaintiff argues, she must be refunded in an amount equal to the "proportion of the purchase price equal to the percentage of non-functional slack-fill." (FAC ¶ 62.) Plaintiff also claims that injunctive relief is warranted because she is "at risk of several types of future injury," including an inability to rely on Defendant's representations, an inability to "uninhibitedly take advantage" of Defendants' products, and hesitation to purchase Defendant's products in the future. (FAC ¶ 85.)

## DISCUSSION

A motion for judgment on the pleadings is "evaluated using the same standard as a motion to dismiss under Rule 12(b)(6)." Kinra v. Chicago Bridge & Iron Co., 2018 WL 2371030, at *6 (S.D.N.Y. May 24, 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

### Subject Matter Jurisdiction

A Rule 12(c) motion "based upon lack of subject-matter jurisdiction is treated as a Rule 12(b)(1) motion." Hornick, 2013 WL 3819643, at *2. In considering a motion to dismiss for lack of subject-matter jurisdiction, "a court must accept as true all material factual allegations

in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." Id. (internal quotation marks omitted). The party seeking to invoke the subject matter jurisdiction of the Court "bears the burden of proving by a preponderance of the evidence that it exists." Mattera v. Clear Channel Commc'ns, Inc., 239 F.R.D. 70, 80 (S.D.N.Y. 2006).

CAFA grants the federal courts original jurisdiction of any class action involving "(1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006); 28 U.S.C. § 1332(d)(2), (5)(b), (6). Defendant argues that, because the FAC states that the number of putative class members is "unknown," and because Plaintiff and Defendant are both citizens of New York, the FAC fails to establish that the class is composed of at least 100 members and that there is minimal diversity. In response, Plaintiff proffers a press release from SweetWorks which states, among other things, that Sixlets candies are "available at retailers across the U.S.," as well as documents indicating that Sixlets are available for purchase on the internet and in bulk quantities. (See, e.g., Lee Decl. Exs. A, C, D.) The Court finds that Plaintiff's evidentiary proffers are sufficient to demonstrate by a "reasonable probability" that the class is composed of 100 or more members and that at least one class member is a citizen of a state other than New York. Blockbuster, 472 F.3d at 59. Because Sixlets candies are distributed nationally and can be purchased in large quantities, the Court infers that more than 100 retail purchases of Sixlets were made during the relevant period, and that at least one of those purchases was made outside of New York.

Next, Defendants contend that, even if Plaintiff has satisfied her burden to demonstrate subject matter jurisdiction, one of three exceptions to CAFA jurisdiction "logically

must apply." Under the "local controversy" exception, a district court must decline jurisdiction if "(1) more than two-thirds of the putative class members are citizens of the state in which the action was originally filed; (2) there is at least one defendant from whom 'significant relief' is sought by the class members, whose alleged conduct forms a 'significant basis' for the asserted claims, and who is a citizen of the state in which the action was originally filed; (3) the principal injuries suffered by the class were incurred in the state in which the action was originally filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years." Mattera, 239 F.R.D. at 77; 28 U.S.C. § 1332(d)(4)(A). Under the "home state controversy" exception, a district court "shall decline to exercise jurisdiction" if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (LexisNexis 2017). Finally, under the "interests of justice" exception, the court may, in the "interests of justice" and after examining the totality of the circumstances, "decline to exercise jurisdiction in class actions in which more than one-third but less than two-thirds of the members of the putative class and the primary defendants are citizens of the state in which the action was originally filed, based upon consideration" of the factors enumerated in 28 U.S.C. § 1332(d)(3). Mattera, 239 F.R.D. at 77. A party seeking to avail itself of an exception to CAFA jurisdiction bears the burden of proving that the exception applies. Id. at 78.

Defendant proffers no argument or evidence in support of its assertion that "at least one of the exceptions to CAFA jurisdiction logically must apply," relying primarily on its contention that Plaintiff has failed to establish minimal diversity. In light of the dearth of evidentiary support for Defendant's argument, the Court finds that Defendant has not met its

burden of demonstrating that an exception to CAFA jurisdiction applies.  Accordingly, the Court finds that it has jurisdiction of this action pursuant to 28 U.S.C. § 1332(d) and denies Defendant's motion for judgment on the pleadings to the extent that it seeks dismissal of this action for lack of subject matter jurisdiction under CAFA.

Count I: Injunctive Relief For Violation of Section 349

Defendant next argues that Plaintiff lacks standing to seek injunctive relief under New York General Business Law § 349 and that the Court therefore lacks jurisdiction of her claims insofar as she seeks injunctive relief.  To demonstrate standing for injunctive relief, a plaintiff must, among other things, establish that she faces a "real or immediate threat" of injury.  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  Id.

Here, Plaintiff alleges that she is "at risk of several types of future injury," including an inability to rely on Defendant's representations, an inability to "uninhibitedly take advantage" of Defendants' products, and hesitation to purchase Defendant's products in the future.  (FAC ¶ 85.)  As other courts have observed in the context of substantially similar allegations, these injuries do not "rise to the level of harms already recognized" as actionable injuries under section 349.  See Daniel v. Mondelez Int'l, Inc., 287 F. Supp. 3d 177, 185-86 (E.D.N.Y. 2018) ("Mondelez") ("Plaintiff's annoyance at being unable to confidently purchase Defendant's Product does not rise to the type of non-pecuniary injury recognized under New York law"); see also Daniel v. Tootsie Roll Indus., LLC, 17 Civ. 7541(NRB), 2018 WL 3650015, at *7 (S.D.N.Y. Aug. 1, 2018) ("Tootsie Roll") (finding similar allegations "plainly

insufficient" to establish a real or immediate threat of injury). Indeed, any assertion that Plaintiff intends to purchase Sixlets in the future is belied by her own allegation that, had she known that the Sixlets box contained non-functional slack-fill, she "would not have bought the [Sixlets] at the given price." (FAC ¶ 47.) As Plaintiff recognizes, "anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again." (Docket entry no. 37 at 10.) Lacking the ability to show certainty of impending future injury, Plaintiff cannot make the showing required by Supreme Court and Second Circuit authority. See Izquierdo v. Mondelez Int'l, Inc., No. 16-cv-04697(CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ("The Supreme Court has 'repeatedly reiterated that "threatened injury must be certainly impending to constitute injury in fact," and that "[a]llegations of possible future injury" are not sufficient.'") (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

Plaintiff argues that, if there is ever to be a proper party to bring suit for injunctive relief, the "usual application of the standing rule must be adjusted" to accommodate consumers who learn about false or misleading packaging. Plaintiff's argument is unavailing because it essentially seeks to allow Plaintiff to assert standing on behalf of individuals who are not yet aware of the allegedly misleading packaging, even though Plaintiff herself does not meet the constitutional requirements for third-party standing. See Mondelez, 287 F. Supp. 3d at 185 ("[T]hird-party standing is generally limited to situations where constitutional rights are at risk and the relationship between a class representative and would-be consumers is not the type of close relationship courts have recognized as creating a prudential exception to the third-party standing rules") (internal quotation marks omitted). Even if Plaintiff is the best conceivable party to assert standing for injunctive relief, the "assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing." Tootsie Roll, 2018 WL

3650015, at *6 (internal quotations omitted).  Plaintiff has proffered no valid basis for variation of the well-established requirements for standing.  Accordingly, Plaintiff lacks standing to seek injunctive relief under section 349 and Count I of the FAC is dismissed.

Counts II and III: Damages for Violations of Sections 349, 350 & 350-a

To assert a claim under section 349 of New York's General Business Law, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Mondelez, 287 F. Supp. 3d at 186 (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)).  Claims under sections 350 and 350-a "must meet all of the same elements as a claim under GBL § 349."  Wurtzburger v. Ky. Fried Chicken, 2017 WL 6416296, at *2 (S.D.N.Y. 2017) (citing Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002)).  The New York Court of appeals has "adopted an objective definition of 'misleading' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  Orlander, 802 F.3d at 300.  Defendant argues that Plaintiff's claims under sections 349, 350, and 350-a must be dismissed because (1) the FAC fails to allege plausibly that the slack-fill contained in the Larger Sixlets Box is non-functional and therefore misleading, and (2) even if the slack-fill contained in Larger Sixlets Box is non-functional, Plaintiff cannot plead plausibly that the packaging was materially misleading because the Larger Sixlets Box clearly and accurately discloses the net weight and total product count. The Court addresses each argument in turn.

1. <u>Non-Functional Slack-Fill</u>

Plaintiff alleges that the slack-fill in the Sixlets box is misleading because it is "non-functional" within the meaning of regulations promulgated by the federal Food and Drug Administration ("FDA"). FDA regulations, which have been incorporated into New York State law, <u>see</u> 1 N.Y.C.R.R. § 259.1(a)(2), provide that "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100(a). The FDA defines non-functional slack-fill as "the empty space in a package that is filled to less than its capacity for reasons other than: (1) [p]rotection of the contents of the package; (2) [t]he requirements of the machines used for enclosing the contents in such package; (3) [u]navoidable product settling during shipping and handling; (4) [t]he need for the package to perform a specific function . . . where such function is inherent to the nature of the food and is clearly communicated to consumers; (5) [t]he fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, . . . or (6) [i]nability to increase level of fill or to further reduce the size of the package. <u>Id.</u>

Similarly, New York law provides that "[f]ood shall be deemed to be misbranded . . . [i]f its container is so made, formed, colored or filled as to be misleading." N.Y. Agric. & Markets Law § 201(4). Although New York's General Business Law does not contain safe harbors for functional slack-fill, it does make it "a complete defense that the act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, . . . any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by . . . federal courts." N.Y. Gen. Bus. Law § 349(d).

Thus, "if slack-fill passes muster under federal law, there is no state-law violation." Izquierdo, 2016 WL 6459832, at *3. To plead nonfunctional slack-fill, therefore, Plaintiff must proffer facts demonstrating that none of the federally permissible bases for slack-fill applies.

In promulgating its slack-fill regulations, the FDA recognized that "there is significant variability in the amount of slack-fill in packages, both between and within commodity classes and even within a single-product line. Factors that influence slack-fill include the physical characteristics of the product, the capabilities of the filling machine, and the way in which the product is handled." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64135, 1993 WL 498605 (Dec. 6, 1993). Thus, "differences in the physical characteristics of a given product, including the need to protect the product from breakage, and precision of filling equipment result in a high degree of variability in the level of functional slack-fill within commodity classes." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 2957-01, 2959, 1993 WL 1564 (Jan. 6, 1993) (emphasis added).

Plaintiff alleges that "almost all" of the slack-fill in the Larger Sixlets Box is non-functional because other candies are packaged in boxes containing less slack-fill. (FAC ¶ 29.) Specifically, Plaintiff avers that a 3.5 oz. box of Sixlets comprising of 40% candy and 60% slack-fill must contain some non-functional slack-fill because (1) more candy is enclosed in a 5 oz. container of Milk Duds, which contains 77% candy and 23% slack-fill, and (2) the same quantity of Sixlets candies can fit into the Smaller Sixlets Box, which contains 89% candy and 11% slack-fill. (See FAC ¶ 1, 28, 30-31, 33.) Plaintiff's allegations are insufficient to support a plausible inference that the slack-fill in Sixlets box is non-functional. As the FAC acknowledges, Sixlets boxes have different volumes and dimensions than Milk Duds boxes, the boxes contain different quantities of candy, and the candies themselves are manufactured by

different companies and are composed of different ingredients.  Because these physical differences bear on the way in which each product must be packaged and handled, a simple comparison between the empty space in a Milk Duds box and that contained in a Sixlets box is insufficient to allege plausibly that the slack-fill in the Sixlets box is non-functional.

Plaintiff's comparison of the Larger Sixlets Box with the Smaller Sixlets Box is similarly insufficient to support a plausible inference of non-functional slack-fill.  Although the nature and quantity of candy are the same, the FAC acknowledges that the larger box includes an inner cellophane bag for the candy and contains no allegations specific to the Larger Sixlets Box from which the Court can infer that the slack-fill contained in the Larger Sixlets Box is greater than what is necessary to accomplish one of the functions enumerated by FDA regulations.  For example, the FAC contains no facts to support a plausible inference that the size of a Larger Sixlets Box is greater than necessary to protect its contents, that the box's dimensions are not required to accommodate filling equipment, or that the box's size is not the result of a need to accommodate any settling in the shipping and handling process.  That 3.5 oz. of Sixlets candy can fit inside the Smaller Sixlets box alone is not enough to support a plausible inference that "almost all" of the slack-fill in the Sixlets box is non-functional, particularly in light of FDA guidance acknowledging the "significant variability" in the amount of slack-fill required "even within a single-product line."  58 Fed. Reg. at 64135.  Moreover, photographs of the cellophane packaged product proffered by Plaintiff and Defendant do not demonstrate that the cellophane-bagged candy could fit inside the Smaller Sixlets Box.

Even if, however, a comparison to the Smaller Sixlets Box could be sufficient to establish, at the pleading stage, that the Larger Sixlets Box contains non-functional slack-fill,

Plaintiff's section 349, 350 and 350-a claims must still be dismissed because she has failed to allege plausibly that the Sixlets box is materially misleading, as required under New York law.

2. Materially Misleading

New York courts have adopted an objective definition of "misleading" and thus, "sections 349 and 350 require more than a determination as to whether the slack-fill, standing alone, constitutes a misrepresentation. Rather, sections 349 and 350 require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation material." Mondelez, 287 F. Supp. 3d at 189-90 (emphasis in original). Thus, to state a claim for violation of sections 349 and 350, Plaintiff must plead facts from which the Court could find that the Sixlets packaging would mislead a reasonable consumer in a material respect. Plaintiff has failed to meet this burden. Her conclusory assertion that the size of the Larger Sixlets Box "makes it appear to Plaintiff and Class members that they are buying more candy than what is actually being sold" (FAC ¶ 5) and other similar assertions are unavailing to show materially misleading misrepresentations. As other courts have observed in connection with similar claims, the box clearly and accurately discloses the net weight and amount (including serving size and number) of the candy contained in the box.[3] See, e.g., Mondelez, 287 F. Supp. 3d at 189-194 ("[A] reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill"); Tootsie Roll, 2018 WL 3650015, at *11-14 (finding, as a matter of law, that no reasonable consumer would be misled by the presence of allegedly non-functional

---

[3] The photographs provided by the parties only illustrate the front of the Sixlets box. Plaintiff does not, however, dispute Defendant's contention that the Sixlets box, like many other candy boxes, displays the serving size and number of servings on the back of each box, thus allowing consumers to calculate easily the number of candies contained in the box.

slack-fill in light of, among other things "the prominence with which the Products' weight appears on the front of the package, the ease with which consumers can calculate the number of candies contained therein, [and] consumers' expectations of slack-fill.").

Relying primarily on FDA commentary and cases interpreting non-New York law, Plaintiff argues that net weight and count disclosures do not preclude an action under sections 349 and 350 where a product is packaged with non-functional slack-fill. The authorities cited by Plaintiff, however, do not address the requirement, specific to New York law, that a package be misleading to a "reasonable customer acting reasonably under the circumstances," Orlander, 802 F.3d at 300. Unlike federal regulations or the laws of other states, New York's objective standard requires looking beyond a product's packaging and to other information available to a reasonable consumer. See Mondelez, 287 F. Supp. 3d at 192 ("As other courts have recognized, a reasonable consumer takes into consideration factors aside from package size in assessing the amount or quantity of a product") (collecting cases).[4]

Plaintiff also argues that the disclosures on the Larger Sixlets Box are insufficient to correct the "misleading visual impression" created by non-functional slack-fill because reasonable consumers ultimately care about product volume, not quantity. Plaintiff's argument appears to be inconsistent with the allegations in the FAC, which state that Plaintiff was deceived as to the quantity of Sixlets contained in the box. (See, e.g., FAC ¶ 5 ("The size of the [Sixlets]

---

[4] The Court perceives no conflict between its conclusion and the court's decision in Izquierdo, where the court "decline[ed] to adopt Mondelez's theory that a manufacturer of a deceptively packaged product is immune from suit so long as the package accurately lists the product's net weight and quantity." 2016 WL 6459832, at *7. As another court has recognized, "disclaimers may not always defeat a claim of deception," but "when the alleged misrepresentation concerns only the amount or quantity of a product, consumers, once apprised of the express accounting on the label, cannot be said to be misled (so long as the information is presented in a clear, easy to understand manner)." Mondelez, 287 F. Supp. 3d at 192 n.14.

box . . . makes it appear to Plaintiff and [c]lass members that they are buying more candy than what is actually being sold."); ¶ 17 ("Plaintiff . . . was financially injured as a result of Defendant's deceptive conduct as alleged herein because she did not receive the quantity that she paid for.").) To the extent that Plaintiff contends that she expected the Sixlets box to be fuller, or that the candy she purchased would occupy more space in the Sixlets box, Plaintiff has not alleged any facts from which the Court can infer that the size or mass—as opposed to the weight or number of pieces—of Sixlets candy is material to a reasonable consumer. See Wurtzburger, 2017 WL 6416296, at *3 (rejecting the argument that the use of a larger than necessary container is materially deceptive or misleading under section 349 "when the consumer ordered, purchased, and received the precise number of items requested.").

Because the FAC does not allege plausibly that the slack-fill contained in the Sixlets box is non-functional, or that the Larger Sixlets Box is materially misleading to a reasonable consumer under the circumstances, Counts II and III of the FAC are dismissed for failure to state a claim upon which relief can be granted.

Count IV: Common Law Fraud

To state a claim for common law fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., 783 F.3d 395, 402 (2d Cir. 2015). A plaintiff "cannot establish justifiable reliance when, 'by the exercise of ordinary intelligence, it could have learned of the information it asserts was withheld.'" Tootsie Roll, 2018 WL 3650015, at *15. Because, as explained above, Plaintiff has not alleged facts sufficient to support plausibly an inference that the Larger Sixlets Box

packaging was materially misleading as to the quantity of Sixlets candies in the box she purchased and, given the content disclosures on the box, she cannot establish that she reasonably relied on any quantity impression derived solely from the size of the box, her common law fraud claim must also be dismissed for failure to state a claim upon which relief may be granted.

CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is denied to the extent that it seeks dismissal of all of Plaintiff's claims for lack of subject matter jurisdiction under CAFA and is granted to the extent that it seeks dismissal of Plaintiff's injunctive relief claim for lack of standing and Plaintiff's remaining causes of action for failure to state a claim. The First Amended Class Action Complaint is dismissed, and the Clerk of Court is directed to enter judgment accordingly and to close this case. This Memorandum Opinion and Order resolves docket entry no. 31.

SO ORDERED.

Dated: New York, New York
August 21, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge